36

*In re* ESTATE OF NELLIE BANIA (Nellie Bania, Cross-Petitioner-Appellant, v. Nannette J. D'Angelo, Petitioner; Chester Pacyna, Cross-Petitioner-Appellee).

First District (2nd Division)    No. 84—1499

Opinion filed December 28, 1984.

Joseph, Susman & Myers, of Chicago, and Kogut & Puccio, of Des Plaines (Jack Joseph and Anthony J. Kogut, of counsel), for appellant.

Kenneth E. Scheiwe, of Chicago, for appellee Nannette J. D'Angelo.

Harry R. Becker, of Mitchell & Allen, of Chicago, for appellee Chester Pacyna.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Acting upon a petition and cross-petitions for appointment of guardian for a disabled person, the circuit court found cross-petitioner-appellant Nellie Bania (Nellie) totally without capacity and appointed persons other than those nominated in her cross-petition as guardians of her person and estate. Nellie appeals and raises as issues whether the circuit court erred by: (1) finding her totally without capacity; and (2) appointing guardians without giving due consideration to her nominees.

On December 16, 1983, Nannette D'Angelo and Salvadore Mendoza filed a petition in the circuit court asking to have Nellie adjudged a disabled person because of her "[m]ental instability due to complications of age and recent surgery," and to have themselves appointed co-guardians of her person and estate. The court appointed a guardian *ad litem* for Nellie on December 21, 1983, who, on January 17, 1984, filed her report, concluding therein that: "Nellie Bania is mostly alert. She has some confusion and forgetfulness. I do not believe she is 'incompetent,' but I do believe she needs help in her tending to her basic needs and that she is subject to influence."

On May 10, 1984, Nellie filed a cross-petition to be adjudged disabled and nominated Mary Bania, wife of Nellie's nephew, as personal guardian and Leona Sonne, a real estate agent, as estate guardian. Another cross-petition was filed on May 17, 1984, by William Pacyna, Nellie's first cousin, seeking to have Mary Bania named personal guardian and Chester Pacyna named estate guardian.

At a hearing on June 7, 1984, petitioner Mendoza testified that: he has known Nellie since 1946; they are "good friends"; after Nellie's companion died in 1979, he helped her by taking her shopping, to the doctor, and, when her physical condition worsened, by feeding her; and since her hospitalization in October 1983, he has collected her social security checks and the rent from her building which he then delivered to his attorney. On cross-examination, he initially denied knowing about a quitclaim deed whereby Nellie conveyed to him and herself in joint tenancy a certain apartment building, but then admitted that Nellie told him she had executed the deed. Nellie put the property in his name because he "would be taking care of her and *** the property." He never asked her to execute the deed. He is not willing to turn over his interest in the property, but would do so if asked by Nellie.

Petitioner D'Angelo testified that Nellie is her mother's mother's sister, or great aunt. She is unaware of any other relatives in the Chicago area. After Nellie's discharge from the hospital in October 1983, Mendoza told her that Nellie was living with Mary Bania. She, her daughters and sister are willing to care for Nellie "where she chooses to live, either in her house or in mine." On cross-examination, D'Angelo said that Mendoza's attorney asked her to be co-guardian with Mendoza, and she agreed.

Raymond Bayster, an attorney, testified that he prepared the quitclaim deed, executed on September 21, 1983, at Nellie's request. He has known Mendoza for 30 years and has done some legal work for him. He was "retained" by D'Angelo after he contacted her and ex-

plained Nellie's need for a guardian. D'Angelo offered to help Nellie, as her mother was living in Florida and was in poor health, and thus was unable to help. He explained that "[t]he word 'retain' is broad," and considered D'Angelo's agreement to having her name on the petition as "retaining." He did not tell D'Angelo that Mendoza, the co-petitioner, had an interest in Nellie's property. Nellie retained him to prepare three documents before she was hospitalized: the deed; a will; and an instrument giving Mendoza power of attorney.

Nellie testified that she doesn't need someone to look after her "all the time." She does not object to Mary Bania being named guardian "to take care of" her. Nellie has no trouble collecting rents, and doesn't need anyone to look after her property, which she can handle by herself. Nellie said she hasn't seen D'Angelo much, and then said "I don't know who she is." She does not want William Pacyna or his son Chester to take care of her things. She did not retain Bayster for any legal work, and didn't sign a deed or go to his office, although she identified the signature on the deed as her own.

Cross-petitioner Pacyna testified that he is Nellie's first cousin and lives in Michigan. His son, Chester Pacyna, testified that he owns and manages two apartment buildings. A retired policeman, he would have ample time to attend to Nellie's financial affairs.

All parties stipulated to the report of a medical evaluation of Nellie submitted by Dr. Roman Solecki, which was admitted into evidence as a joint exhibit, noting that Nellie suffers from "Senile Dementias—uncomplicated *** manifested by severe memory impairment, impaired judgment, also disoriented as to time, partially oriented to place and person."

The circuit court found Nellie to be disabled and appointed Chester Pacyna guardian of Nellie's estate and D'Angelo guardian of her person. No reasons for this decision were given at the hearing. The order entered on June 11, 1984, found Nellie "totally without understanding or capacity to make or communicate decisions regarding his/her person" and "totally unable to manager [sic] his/her estate or financial affairs." The court gave as a factual basis for this determination the medical report stipulated to by all parties "and upon a hearing of further testimony." This appeal followed.

I

Nellie contends that the circuit court's finding of total disability and its granting of plenary guardianship are not supported by the record and thereby contravene section 11a—3(b) of the Probate Act (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(b)), which provides, in part,

that guardianship is to be utilized only as is necessary to promote the well-being of the disabled person, to protect her from neglect, exploitation, or abuse, to encourage development of her maximum self-reliance and independence, and should be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations.

All the parties herein stipulated, however, that Nellie was disabled. The "limited capacity" argument being put forth on appeal was never raised in the circuit court. Indeed, the record reflects that the court's inquiry was limited from the outset to a determination of who should be appointed guardian. At the beginning of the hearing the court asked whether Nellie was "disabled under the statute," and, upon being advised by counsel that she was, stated that "the question is who should be the guardian of her estate and person." Later the court sustained Nellie's objection to certain testimony related to her competency and rejected appellees' argument that this testimony was relevant to the issues before the court, stating:

"THE COURT: Before me is a petition as to whether or not Nellie Bania is a disabled person. There is a stipulation by the three of you, by all three counsel that she is disabled as to her person and to her estate and the only issue before me is who is going to be appointed guardian of the estate and of the person.

MR. KOGUT [Nellie's attorney]: Exactly.

THE COURT: That is the only thing before me."

Nellie's subsequent objection to further such testimony was also sustained. Having succeeded in excluding this testimony, counsel for Nellie did not thereafter raise the "limited capacity" argument.

■ Nellie's closing argument, furthermore, addressed only the question of who should be appointed her guardian. She offered no suggestions for limiting the guardianship order to conform to her degree of disability. Nellie has waived her right to argue the "limited capacity" issue or to suggest how tne guardianship order should be restricted. A party cannot complain of such errors which she has committed, invited or induced the court to make. (*Meyer v. Polivat* (1957), 13 Ill. App. 2d 491, 492, 142 N.E.2d 747; *Peters v. Hokin* (1976), 41 Ill. App. 3d 995, 997, 355 N.E.2d 205. See also *City of Waukegan v. Stanczak* (1955), 6 Ill. 2d 594, 608, 129 N.E.2d 751.) We find no basis for overturning the court's conclusion in this regard.

## II

■ Nellie next maintains that the circuit court erred by rejecting her choice of guardians, contrary to section 11a—12(d) of the Probate

Act (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—12(d)), which provides, in part, that the selection of the guardian is in the discretion of the court, which is to give due consideration to the preference of the disabled person as to a guardian in making its appointment. Nevertheless, the paramount concern in the selection of a guardian is the best interest and well-being of the disabled person, regardless of that person's choices. See *In re Estate of Vicic* (1979), 79 Ill. App. 3d 383, 385, 398 N.E.2d 420.

The record here supports the court's rejection of Nellie's nominee for personal guardian, Mary Bania, and its appointment of Nannette D'Angelo. In her report, the guardian *ad litem* noted that, after Nellie's discharge from the hospital, Mary Bania took her to the bank in which Nellie keeps $150,000-$200,000. The guardian *ad litem* was concerned especially that Nellie did not know why she and Mary went to the bank or what happened there. The guardian *ad litem* also interviewed Dr. Huq, Nellie's treating physician. He told her that elderly people who need physical care are insecure, very subject to influence, may be frightened, and when they are being cared for do not want to "rock the boat." Although present at the hearing, Mary Bania did not testify. In view of the doubt cast on Mary Bania's motives and freedom from self-interest, and her failure to explain the trip to the bank or to testify at all, the court did not err by rejecting her as guardian. Under the former provisions of the Probate Act, the conservator of an incompetent's estate was required to be free of any interest which might appear to prevent the proper assertion or protection of the incompetent's rights. *In re Estate of Lamont* (1973), 13 Ill. App. 3d 714, 716, 300 N.E.2d 574; *Proehl v. Leadley* (1967), 86 Ill. App. 2d 472, 477, 230 N.E.2d 516.

The appointment of D'Angelo as personal guardian was also amply supported by the record. Nellie contends that D'Angelo was solicited by Mendoza's attorney to join Mendoza on his petition as co-guardian; therefore, since Mendoza's interest in the guardianship is questionable, his co-nominee should also have been rejected. The court correctly did not appoint Mendoza because of his possible self-interest; however, nothing suggests similar self-serving motives on the part of D'Angelo. She was not told of Mendoza's interest in Nellie's property and only wanted to help her great aunt. D'Angelo has known Nellie for 44 years and has visited or phoned her weekly since 1982. She is divorced and the co-owner of a health food store, and her daughters (aged 18 and 21) and sister would help her care for Nellie, whether in Nellie's home or D'Angelo's. Through D'Angelo's testimony, therefore, the court was justified in concluding that she could provide "an

active and suitable program of guardianship for the disabled," as required by section 11a—5(a) (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—5(a)).

The court also did not abuse its discretion by appointing as Nellie's estate guardian Chester Pacyna, the son of Nellie's first cousin, instead of Leona Sonne, Nellie's nominee. Although available, Sonne, a real estate agent unrelated to Nellie, did not testify. The only evidence concerning her was Nellie's assertion that she was a "very good woman" who could be trusted to collect her rents. Chester, however, testified that he is a retired policeman who lives in Chicago; has had repeated contact with Nellie over the years; owns and manages two buildings of his own; and would have ample time available to manage Nellie's estate. We find no abuse of discretion in the selection and appointment by the circuit court of Nellie's personal and estate guardians.

For the foregoing reasons, we affirm the circuit court findings of Nellie's disability and its appointment of Nellie's personal and estate guardians.

Affirmed.

STAMOS and PERLIN, JJ., concur.