169 Ill. App.3d 641 (1988)
523 N.E.2d 1025
In re ESTATE OF LAWRENCE KUTCHINS, a Disabled Person (Jenner & Block, Petitioner-Appellant,
v.
La Salle National Bank, Respondent-Appellee).
No. 85-2301.
Illinois Appellate Court  First District (3rd Division).
Opinion filed April 27, 1988.
*642 Addis E. Hull and Sidney I. Schenkier, both of Jenner & Block, of Chicago, for appellant.
Joseph L. Mack, of Chicago, for appellee.
Order affirmed.
JUSTICE RIZZI delivered the opinion of the court:
Plaintiff, Jenner & Block (Jenner), appeals from an award of attorney fees and costs received as a result of Jenner's representation of Lawrence Kutchins (Kutchins), a disabled person. Jenner contends that the trial court erred in denying it the entire amount of the attorney fees that it requested for services provided by Jenner. Jenner maintains that the award of attorney fees does not properly take into account that Jenner (1) represented Kutchins on the appeal from the trial court's order approving the sale of Kutchins' shares of stock in New Process Baking Company (New Process); (2) attempted to reach a settlement with Kutchins' family regarding its objection to Kutchins' restoration, the sale of Kutchins' shares of stock and other family disputes; and (3) performed a substantial amount of work that was directly related to Kutchins' restoration. Jenner also maintains that the court erred in not rendering an explanation of its order granting Jenner attorney fees and costs. We affirm.
On February 23, 1983, Kutchins was adjudicated a disabled person by the circuit court of Cook County. On June 7, 1983, American National Bank and Trust Company resigned as appointed plenary guardian, and La Salle National Bank (La Salle) was appointed successor plenary guardian. La Salle, in its capacity as guardian, decided that it would be in the best interest of Kutchins to sell his shares of stock in New Process. Thus, on February 3, 1984, La Salle filed a petition requesting permission from the court to sell the stock. La Salle presented evidence informing the court that Heileman Brewing Company had offered to buy the stock of New Process for $13 million provided that the sale include the stock of Kutchins' brother, Edmund Kutchins. La Salle later informed the court that Kutchins was opposed to *643 any sale of his stock. La Salle suggested that because Kutchins was represented by counsel, he be given the opportunity to present his position in opposition to the sale.
Kutchins obtained legal representation in March of 1984. However, Kutchins did not contact Jenner for representation until July 30, 1984. At that time, Kutchins requested that Jenner represent him to prevent the sale of his shares of stock and to obtain his restoration.
On August 7, 1984, Kutchins' previous counsel moved to withdraw, and Jenner filed its appearance. Jenner also presented a petition to (1) terminate the adjudication of Kutchins' disability; (2) revoke La Salle's letters of guardianship; and (3) have its attorney fees and costs paid out of Kutchins' estate. Although not in its petition, Jenner asked the court to delay any ruling on the sale of Kutchins' New Process stock pending a decision on the restoration petition. It was Jenner's contention that Kutchins' restoration would render moot the issue of the stock sale. The trial court set August 16, 1984, as the date for a final hearing.
At the August 16 hearing, Jenner argued in favor of restoration of Kutchins. Jenner also argued in opposition to the sale of stock. Jenner made an offer of proof that if Kutchins' psychiatrist, Dr. Edward Wolpert, were allowed to testify, he would state that Kutchins has the capacity to manage both his property and his personal affairs. Following argument of counsel, the court approved the sale of Kutchins' New Process stock to Heileman.
Jenner then filed a motion for a stay, without bond, pending appeal. Jenner argued that if the court did not grant a stay of its order, Kutchins would lose his opportunity to contest the sale of his stock, because the sale might become final before restoration would be granted. Jenner's motion was denied. A hearing on Kutchins' restoration petition was set for October 2, 1984.
Thereafter, Jenner, without permission from the trial court or La Salle, immediately filed its notice of appeal from the court's order granting the sale of the stock. Upon an emergency motion, the appellate court entered an order staying the sale pending Kutchins' restoration hearing. After the stay was granted, Jenner filed a jury demand and a change of venue motion in Kutchins' restoration proceeding. Judge Dowdle granted the change of venue motion and the case was reassigned to Judge Michael F. Czaja. Kutchins' wife, Adeline, moved to strike the jury demand, but this motion was denied by Judge Czaja and a trial date for Kutchins' restoration proceedings was set for November 13, 1984.
In preparation for trial, Jenner conducted depositions and legal *644 research. Jenner also engaged in extensive settlement negotiations with Kutchins' family. On November 14, 1984, a settlement in principle was reached by the parties, and Jenner drafted a written document to reflect this agreement. The essential terms of the settlement provided that: (1) Kutchins would no longer oppose the stock sale and his family members would not oppose his restoration; (2) the approximately $7 million that Kutchins' estate would receive from the stock sale would be appropriately invested; and (3) certain actions would be taken regarding Kutchins' estate, trust funds and the selection of trustees. On the following day, November 15, 1984, the proposed agreement was presented to Judge Czaja. Judge Czaja continued the restoration proceeding to a later date. On November 20, 1984, the order staying the stock sale expired. Jenner then voluntarily withdrew its pending motion to extend the stay on November 26, 1984.
After the stock sale, Jenner prepared for a hearing on Kutchins' restoration proceedings. However, the settlement agreement was never signed and a hearing was never held on Jenner's petition for Kutchins' restoration. In late March of 1985, Kutchins retained other counsel and released Jenner from its representation of his affairs.
On April 5, 1985, Jenner filed a petition for an award of attorney fees and costs in the amount of $137,818.86. The petition included Jenner's hourly billing rate and an affidavit and computer printout of all time and disbursements expended in Jenner's representation of Kutchins. The court granted Jenner an interim award of 40% of the fees and costs requested and an award for all disbursements made.
Objections to Jenner's fee petition were filed by La Salle. La Salle argued that Jenner (1) should not be compensated for its appellate work regarding its challenge to the stock sale; (2) must establish that the time expended and charges made did not duplicate other services already rendered and that the time expended and charges made were reasonable and necessary; and (3) must establish that the novelty and difficulty of the questions involved in the restoration litigation required the skill of Jenner's most experienced counsel to the extent of the scheduled time devoted thereto.
The court scheduled June 13, 19, and 24, 1985, as hearing dates for Jenner's fee petition. The court heard testimony from Jenner regarding its time record, the time spent on Kutchins' representation and the reasonableness of the amount of fees requested. On July 10, 1985, the court awarded Jenner $53,309.46 of the $137,818.86 requested. In its order, the court stated that Jenner was "not authorized to appeal the order authorizing the guardian of the estate to sell the ward's stock in New Process Baking Co.," and Jenner was "not *645 authorized to render services to the ward for any type of settlement agreement." Jenner made a motion to clarify the court's order, and on July 30, 1985, the court ruled that the $53,309.46 awarded Jenner was the total amount of compensation for attorney fees and costs that Jenner was entitled to receive for its representation of Kutchins. This appeal followed.
Jenner first argues that the trial court erred in not granting it attorney fees and costs for its appeal from the court's order approving the sale of Kutchins' stock in New Process. It is Jenner's position that this appeal was necessary to its representation of Kutchins. We disagree.
 1 As a general rule, attorney fees and costs incurred in the representation of an incompetent in an incompetency proceeding are a "necessary" of that incompetent for which his estate may be assessed reasonable fees by the court. (In re Estate of Sherwood (1965), 56 Ill. App.2d 334, 339, 206 N.E.2d 304, 307.) However, one who undertakes to act on behalf of an incompetent must have the express power and authority from the court to act for such person and to bind him and his estate. In re Estate of Rankin (1944), 322 Ill. App. 64, 67.
Here, the record demonstrates that on February 3, 1984, La Salle, aware that Kutchins was not in favor of the stock sale, suggested that Kutchins' counsel be given the opportunity to present Kutchins' position regarding the sale. Jenner was retained by Kutchins on July 30, 1984. Kutchins informed Jenner that he wanted Jenner to oppose the stock sale and obtain his restoration. Jenner was aware of the fact that Kutchins had previously been adjudged an incompetent, and that La Salle had been appointed as Kutchins' plenary guardian. However, when Jenner appeared in court, it filed a petition only for (1) termination of adjudication of Kutchins' disability; (2) revocation of La Salle's letters of guardianship; and (3) attorney fees rendered for work associated with Kutchins' restoration. Although Jenner informed the court that Kutchins was opposed to the stock sale and argued against the sale in court, Jenner made no mention in its petition of Kutchins' request that Jenner represent him to oppose the stock sale. Moreover, Jenner neither requested nor received permission from the court or La Salle to appeal the court's approval of the stock sale.
 2 We find no authority which would allow Jenner to represent Kutchins, an incompetent, without permission from the court or Kutchins' legal guardian. The law clearly mandates:
"From the time a person is adjudged to be distracted and incapable of caring for his property and effects, until, if ever, he *646 is adjudged to be restored, he has no more legal power to act for himself than as if he were dead. A contract made, or release or receipt given, by him has no legal significance. [Citation.] Persons who during that time have business transactions in which he is concerned must deal with him through his conservator." Bradshaw v. Lucas (1919), 214 Ill. App. 218, 223.
The purpose of appointing a guardian for an incompetent is to protect the incompetent from personally wasting his estate or allowing others to do so. It would be illogical to appoint a guardian to oversee the estate of an incompetent, and then allow the incompetent to hire attorneys and have the attorneys act without express permission from the guardian or the court. Thus, where a guardian is appointed, no one except the guardian can act for or on behalf of the incompetent without express authority or appointment.
 3 We therefore conclude that Jenner's argument that it should be compensated for an appeal which was taken without permission from the court or La Salle is without merit. We further conclude that the record fails to sustain Jenner's position that it should be compensated for time expended drafting and finalizing an agreement between Kutchins and his family members to settle family disputes. Jenner neither requested nor received permission to represent Kutchins beyond his restoration proceedings. As a result, Jenner is not entitled to compensation for these services.
 4, 5 Jenner next argues that it performed a substantial amount of work that was directly related to Kutchins' restoration. We do not dispute this contention. The record demonstrates that Jenner took substantial steps toward obtaining Kutchins' restoration. The record also reveals that Jenner was awarded $53,309.46 by the court for its representation of Kutchins.
It is well settled that the issue of attorney fees lies within the sound discretion of the trial court, and the award granted by the trial court will not be disturbed absent an abuse of that discretion. (Rennacker v. Rennacker (1987), 156 Ill. App.3d 712, 715-16, 509 N.E.2d 798, 801.) In granting Jenner its award, the court stated:
"[T]he order reflects my feeling as to when the Court appoints an attorney at the request of the ward, and that is the only service the attorney is able to perform, because if the attorney can do something else, by what authority or by what direction does he do it? At the request of the mentally disabled person?"
In response to Jenner's request for clarification of the court's order regarding its assessment of attorney fees and costs, the court stated:
"I took into consideration all of the disbursements and all of *647 the time that was in the petition, and then I just tried to come up with what I felt to be reasonable attorney's fees and reasonable disbursements, based on this case, and based on all the other cases that I have had. This is what I believe to be reasonable, both in the way of disbursements and attorney's fees."
The record demonstrates that the court acknowledged both the complexity and complications involved in the representation of an incompetent. Also, the record demonstrates that in exercising its discretion, the court took into account the evidence presented, the court's past experience with similar cases and the reasonableness of the award. In light of the record before us, we cannot conclude that the award granted Jenner was an abuse of the court's discretion. Nor can we conclude that the court gave an inadequate explanation for its award.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.
WHITE, P.J., and McNAMARA, J., concur.