NO. 4-04-1026

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Estate of MARY ROSE DOYLE,

an Alleged Disabled Adult,

JAMES P. DOYLE and GARY EKLUND,

          Petitioners-Appellees,

          v. 

ROSE MARIE DOYLE,

          Respondent-Appellant.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Sangamon County

No. 04P181

Honorable

Dennis L. Schwartz, 

Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

The respondent, Rose Marie Doyle, appeals the order of the Sangamon County circuit court appointing petitioner James Doyle guardian of the person and petitioner Gary Eklund as guardian of the estate of Mary Rose Doyle (Mrs. Doyle).  We affirm.

Respondent raises the following issues on appeal:  (1) the judgment appointing the guardians is void because the temporary guardianship was extended past 60 days and the hearing for permanent guardianship was not set within 30 days, which was contrary to jurisdictional requirements; (2) the appointment of the guardian for the estate is void because a valid power of attorney was in effect; (3) the trial court erred when it failed to strike the guardian 
ad
 
litem's
 report; (4) the court erred when it refused to allow respondent to reopen her case and call Mrs. Doyle as a witness; (5) the court erred when it allowed petitioners' witnesses to testify after petitioners failed to properly answer respondent's Supreme Court Rule 213 interrogatory; (6) the court erred when it allowed testimony and business records into evidence without a proper foundation; and (7) the court abused its discretion by its appointment of petitioners as guardians.

On March 11, 2004, petitioners filed for temporary and permanent guardianship of Mrs. Doyle.  On March 12, 2004, the trial court appointed petitioner James Doyle as the temporary guardian of Mrs. Doyle's person and petitioner Gary Ecklund, Mrs. Doyle's son-in-law, as temporary guardian of her estate.  The court also appointed a guardian 
ad
 
litem
 for Mrs. Doyle.  On March 19, 2004, respondent filed a petition, which was later denied, to revoke the temporary guardianship.  On May 12, 2004, the court granted petitioners' request to extend the temporary guardianships to June 24, 2004.  

Over the course of five days between June and August 2004, the trial court heard evidence on petitioners' request for guardianship.  The court heard testimony from Mrs. Doyle's family, care givers, friends and acquaintances, as well as testimony from a caseworker and an investigator from Senior Services of Central Illinois, who investigated the allegations of abuse to Mrs. Doyle.  The court also received a prehearing report and a posthearing report from the guardian 
ad
 
litem
 recommending that petitioner Eklund be appointed guardian of Mrs. Doyle's estate and that either petitioner James Doyle or John Doyle be appointed guardian of Mrs. Doyle's person.

On September 7, 2004, the trial court found Mrs. Doyle disabled and incapable of managing her own estate and person.  The court appointed petitioner James Doyle as permanent plenary guardian of Mrs. Doyle's person and petitioner Eklund as the permanent plenary guardian of her estate.  On October 1, 2004, respondent filed a motion for rehearing or to vacate the judgment.  In November 2004, the court denied this motion.  This appeal followed.  

Respondent first argues the trial court's permanent guardianship order is void because petitioners' temporary guardianships were unlawfully extended past 60 days.  Section 11a-4 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-4 (West 2004)) states:

"The temporary guardianship shall expire within 60 days after the appointment or whenever a guardian is regularly appointed, whichever occurs first.  Except pending the disposition on appeal of an adjudication of disability, no extension shall be granted."

If the court erred in extending petitioners' temporary guardianships beyond 60 days, the question becomes whether this has any effect on the court's ultimate guardianship determination.  Rose Marie fails to provide any authority why the extension of the temporary guardianships makes the court's ultimate guardianship decision void.  According to Illinois Supreme Court Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001)), an appellant's brief shall contain:

"Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. ***  Citation of numerous authorities in support of the same point is not favored.  Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

As a result, respondent forfeited this argument.

Respondent next argues the trial court's guardianship order is void because the guardianship hearing was not held within 30 days of the filing of the guardianship petition.  The portion of the statute at issue states:  "Upon the filing of a petition pursuant to [s]ection 11a-8, the court shall set a date and place for hearing to take place within 30 days."  755 ILCS 5/11a-10 (West 2004). 

"The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute."  
People v. Woodard
, 175 Ill. 2d 435, 443, 677 N.E.2d 935, 939 (1997).  If the language of a statute is clear and unambiguous, we do not resort to other aids of statutory construction.  
Woodard
, 175 Ill. 2d at 443, 677 N.E.2d at 939.  While the language of this statute is clear that the court has 30 days to conduct a hearing on a guardianship petition, the statute is not clear on whether this 30-day requirement is mandatory or directory.  

Our supreme court has stated that ordinarily when a statute uses the word "shall" it indicates a mandatory rather than a directory intent.  
Woodard
, 175 Ill. 2d at 445, 677 N.E.2d at 940.  However, this is not a rigid rule.  
Woodard
, 175 Ill. 2d at 445, 677 N.E.2d at 940.  Depending on the context of the statutory provision and the drafters' intent, the statute may be treated as permissive.  
Woodard
, 175 Ill. 2d at 445, 677 N.E.2d at 940.  

We have stated that a universal formula for distinguishing between mandatory and directory provision does not exist.  
Cooper v. Department of Children & Family Services
, 234 Ill. App. 3d 474, 481, 599 N.E.2d 537, 542 (1992).  It depends on the intent of the legislature, "which is ascertained by examining the nature and object of the statute and the consequences which would result from any given construction."  
Cooper
, 234 Ill. App. 3d at 481, 599 N.E.2d at 542.  

"Ordinarily a statute which specifies the time for the performance of an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by failure to act within the time indicated.  However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory.

***

Where, as here, a statute does not provide sanctions for failure to comply with the provision in dispute, the requirement in the statute may be interpreted as being merely directory rather than mandatory. [Citation.] If a provision of a statute states the time for performance of an official duty without any language denying performance after a specified time, it is directory.  However, if the time period is provided to safeguard someone's rights, it is mandatory, and the agency cannot perform its official duty after the time requirement has passed."  
Cooper
, 234 Ill. App. 3d at 482, 599 N.E.2d at 542.

The statute at issue in this case does not contain any negative language or provide for any sanctions or other consequences for failure to conduct the hearing within 30 days of the filing of the petition.  Further, we find a mandatory interpretation of this statute would be contrary to the purposes of the Probate Act, which is to provide for the best interests of disabled adults and would adversely affect disabled adults in need of a guardian.   

While respondent argues the statute should be given a mandatory construction because Mrs. Doyle's rights are affected by the guardianship, she does not make any arguments that Mrs. Doyle's rights were injuriously affected by the fact the guardianship hearing was not held within 30 days after the guardianship petition was filed.  

Based on the above factors, we find the 30-day requirement in section 11a-10 of the Probate Act (755 ILCS 5/11a-10 (West 2004)) for a guardianship hearing is directory and not mandatory.  As a result, the trial court's guardianship order is not void.

Respondent also argues the trial court's appointment of a guardian for Mrs. Doyle's estate is void because Mrs. Doyle executed a document giving respondent power of attorney over Mrs. Doyle's property in February 1998.  Respondent does acknowledge she received a letter purportedly from Mrs. Doyle revoking the power of attorney.  However, she argues that this letter was not effective because Mrs. Doyle was incompetent when she signed the letter.  Petitioners argue that section 2-5 of the Illinois Power of Attorney Act (Power of Attorney Act) (755 ILCS 45/2-5 (West 2004)) does not require a person to be competent to revoke a power of attorney.  

We need not decide whether an incompetent individual can revoke a power of attorney in this case, because we find the trial court implicitly revoked respondent's power of attorney pursuant to section 2-10 of the Power of Attorney Act (755 ILCS 45/2-10 (West 2004)).  According to section 2-10 of the Power of Attorney Act:

     "Upon petition by any interested person (including the agent), with such notice to interested persons as the court directs and a finding by the court that the principal lacks the capacity to control or revoke the agency: (a) if the court finds that the agent is not acting for the benefit of the principal in accordance with the terms of the agency or that the agent's action or inaction has caused or threatens substantial harm to the principal's person or property in a manner not authorized or intended by the principal, the court may order a guardian of the principal's person or estate to exercise any powers of the principal under the agency, including the power to revoke the agency, or may enter such other orders without appointment of a guardian as the court deems necessary to provide for the best interests of the principal; or (b) if the court finds that the agency requires interpretation, the court may construe the agency and instruct the agent, but the court may not amend the agency. Absent court order directing a guardian to exercise powers of the principal under the agency, a guardian will have no power, duty[,] or liability with respect to any property subject to the agency or any personal or health care matters covered by the agency."  755 ILCS 45/2-10 (West 2004).
 

While petitioners did not file a specific petition under section 2-10, they did file a petition seeking guardianship over Mrs. Doyle and all of the interested persons in this case had knowledge that petitioners were asking to be guardians of Mrs. Doyle's person and estate.  After numerous hearings where the trial court heard testimony from a variety of witnesses and received two reports from Mrs. Doyle's guardian 
ad
 
litem
, the court found Mrs. Doyle was a disabled person as defined in Article XIa of the Probate Act of 1975 (755 ILCS 5/11a-1 through 11a-23 (West 2004)) and incapable of managing her own estate and person.  Implicitly, the court found Mrs. Doyle lacked the capacity to control or revoke the power of attorney.  The court also found that respondent's original devotion to her mother turned into abuse.  The court then granted petitioners the same powers Mrs. Doyle had originally given to respondent.  The court stated:

"There were some things also said in [the guardian 
ad
 
litem's
] report that I believe were put as gently as possible when he talks
 
about the role Rose Marie Doyle has had in her [m]other's life, and [the guardian 
ad
 
litem
] says--and I want everyone here to hear these words--no one involved in this matter has minimized or has failed to appreciate the years of dedicated loving service and care which Rose Marie Doyle has provided for Mrs. Doyle, but by her own testimony and in her own words, Rose Marie simply wore out.  There is no reason why Rose Marie can not continue to be a loving positive force in her mother's life during her remaining years.  She should do that now strictly as a daughter.  Care and custody and management of financial matters should not rest with Rose Marie.  She has now done her part, and it is now someone else's turn.  That impressed me, those words and that language.  In fact, this entire document did impress me.

My obligation is to insure for [Mary Rose] Doyle the best quality of life for her remaining years.  Being able to see and visit with her family and friends should be an important part of that, and in the opinion of this [c]ourt[,] it is in the best interest of Mary Rose Doyle [that] her son, James, be the [g]uardian of her [p]erson, and her son, Gary Eklund, [g]uardian of the [e]state.

Although the [c]ourt acknowledge[s] the time and efforts Rose Marie has spent in taking care of the needs of her parents, 
it
 
does
 
appear
 
there
 
came
 
a
 
time
 
when
 
her
 
devotion
 
turned
 
to
 
abuse
.

It also is this [c]ourt's opinion that there exists inconsistencies in the manner in which Rose Marie Doyle managed the funds and property of Mary Rose Doyle.  That took place over a number of years, and if permitted to continue would dissipate the assets of Mary Rose Doyle.  It is my further opinion [that] she would bankrupt her estate.  This concerns the [c]ourt.  
It
 
does
 
not
 
appear
 
that
 
the
 
best
 
interest
 
of
 
Mary
 
Rose
 
Doyle
 
was
 
the
 
primary
 
concern
 
of
 
Rose
 
Marie
 
Doyle
 
at
 
this
 
time
."
  
(Emphasis added.) 

The powers given to the guardian of the estate are set forth in section 11a-18 of the Probate Act (755 ILCS 5/11a-18 West 2004)).  These powers are also set forth with respect to a power of attorney in sections 3-3 and 3-4 of the Power of Attorney Act (755 ILCS 45/3-3, 3-4 (West 2004)). 
 While not expressly stating it was following section 2-10 of the Power of Attorney Act (755 ILCS 45/2-10 (West 2004)), the court implicitly met the requirements of section 2-10 and stripped respondent of her authority as power of attorney and gave that power to petitioners James Doyle and Gary Eklund.

Respondent next argues the trial court erred when it failed to strike the guardian 
ad
 
litem
's report.  In her initial brief, respondent based her argument on the guardian 
ad
 
litem
's failure to (1) testify, (2) advise Mrs. Doyle of her rights, and (3) ask Mrs. Doyle's position with regard to the appointment of a guardian.  However, in her reply brief, respondent acknowledges Mrs. Doyle was advised of her rights.  In addition, the record is clear that the guardian 
ad
 
litem
 did obtain Mrs. Doyle's position with regard to the appointment of a guardian.

The issue is whether the guardian 
ad
 
litem
's failure to testify pursuant to section 11a-10(a) of the Probate Act (755 ILCS 5/11a-10(a) (West 2004)) necessitates the court striking his reports.  According to section 11a-10 (755 ILCS 5/11a-10(a) (West 2004)), "[t]he guardian ad litem shall appear at the hearing and testify as to any issues presented in his or her report."  However, the statute does not state that a guardian 
ad
 
litem
's reports should be stricken if he or she does not testify.  Further, Rose Marie did not provide this court with any authority or reasoning as to why the guardian 
ad
 
litem
's failure to testify necessitated the trial court striking his reports.  In addition, respondent does not cite where in the record she asked the court to strike the reports during the guardianship proceeding.  Further, it does not appear respondent ever asked to have the guardian 
ad
 
litem
 testify before the court issued its guardianship decision, even though the guardian 
ad
 
litem
 was present at every hearing where testimony was taken.  According to Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001), a court of review is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented or the inadequately presented argument is deemed forfeited.  We find respondent's argument forfeited.

Respondent next argues the trial court erred in denying her request to reopen her case and call Mrs. Doyle as a witness.  A court's decision whether to allow a party to reopen his or her case to present additional evidence will not be disturbed unless the court abused its discretion.  
People v. Ford
, 139 Ill. App. 3d 894, 900, 488 N.E.2d 573, 577 (1985).  Mrs. Doyle's attorney made it clear that Mrs. Doyle did not want to attend the proceedings.  Further, the trial court was aware of how Mrs. Doyle would testify based on the guardian 
ad
 
litem
's prehearing report.  The court did not abuse its discretion in not allowing respondent to reopen her case and force Mrs. Doyle to come to court and testify.

Respondent next argues the trial court should not have allowed petitioners' witnesses to testify because petitioners failed to properly answer her interrogatory, which asked for witness disclosures pursuant to Supreme Court Rule 213(f) (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213(f), eff. July 1, 2002).  From the record it appears that respondent did not technically comply with Supreme Court Rule 201(k) (166 Ill. 2d R. 201(k)) and Supreme Court Rule 219 (166 Ill. 2d R. 219) before asking the court to bar petitioners' witnesses. However, even if we were to find respondent complied with Rules 201(k) (166 Ill. 2d R. 201(k)) and 219 (166 Ill. 2d R. 219) in asking for sanctions, and petitioners violated Rule 213(f) (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213(f), eff. July 1, 2002) by failing to answer respondent's witness disclosure interrogatory, respondent again forfeited this argument pursuant to Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001).

Our supreme court has stated:

"In determining whether the exclusion of a witness is a proper sanction for nondisclosure, a court must consider the following factors: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness.  The decision whether or not to impose sanctions lies within the sound discretion of the trial court, and that decision will not be reversed absent an abuse of discretion."  
Sullivan v. Edward Hospital
, 209 Ill. 2d 100, 110, 806 N.E.2d 645, 652 (2004).

Respondent failed to provide any argument as to how these six factors apply in this case.  As a result, we cannot determine if the court abused its discretion in not barring these witnesses.

Rose Marie next makes several arguments that the trial court erred when it allowed testimony and business records into evidence without proper foundation.  A court's decision whether to admit evidence will only be disturbed if the court abused its discretion.  
Hiscott v. Peters
, 324 Ill. App. 3d 114, 122, 754 N.E.2d 839, 847 (2001).  A party must make a proper objection to preserve his or her argument that the court erred in admitting evidence.  
Casson v. Nash
, 74 Ill. 2d 164, 171, 384 N.E.2d 365, 368 (1978).  A specific objection only preserves the ground specified.  
People v. Lewis
, 165 Ill. 2d 305, 335, 651 N.E.2d 72, 86 (1995).  Objections must also be timely.  
Hunter v. Chicago & North Western Transportation Co.
, 200 Ill. App. 3d 458, 472, 558 N.E.2d 216, 225 (1990).  Respondent failed to preserve her foundation objection to petitioner's exhibit No. 3 because she only objected that medical records are not admissible in Illinois.  She did not raise a foundation objection until after the court admitted the exhibit into evidence.  

Respondent also failed to preserve her argument that Erin Tanner should not have been allowed to read from her records because they had never been admitted into evidence and because petitioners failed to lay an adequate foundation that Tanner had exhausted her memory. 

Respondent also argues the court erred in allowing Craig Anderson to read from his notes, which respondent argues contained hearsay.  Respondent objected once to Anderson reading from his notes and that objection was sustained.  With regard to the alleged hearsay, respondent again objected once about a statement Anderson said respondent made to him.  This objection was overruled.  Respondent does not argue that the testimony in question does not fall within any of the hearsay exceptions, most notably the exception for admissions by a party opponent.  As a result, respondent has forfeited this argument pursuant to Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001).

Finally, respondent argues the trial court erred in appointing petitioners Doyle and Eklund as guardians of Mrs. Doyle's person and estate, respectively.  The standard of review for the appointment of a guardian is abuse of discretion.  
In re Schmidt
, 298 Ill. App. 3d 682, 690, 699 N.E.2d 1123, 1128   (1998).  In determining who shall be a disabled person's guardian, the disabled person's personal preferences as to who should be his or her guardian is outweighed by what is in the disabled person's best interest.  
In re Estate of Bania
, 130 Ill. App. 3d 36, 40, 473 N.E.2d 489, 492 (1984).  

When the court announced its decision regarding Mrs. Doyle's guardianship, the court specifically stated that no one involved in the case minimized or "failed to appreciate the years of dedicated loving service and care which [respondent] has provided for Mrs. Doyle."  However, the court also stated it appeared respondent's devotion to her mother eventually turned into abuse.

Respondent has presented no evidence that petitioners are unqualified to serve as guardians.  Her only argument as to their qualifications is that they do not live in Illinois.  However, section 11a-5 of the Probate Act (755 ILCS 5/11a-5 (West 2004)) does not list Illinois residency as a requirement to act as a guardian.  

Before making its decision, the trial court heard numerous witnesses testify in this case.  Some witnesses testified they believed respondent was abusing Mrs. Doyle.  Other witnesses testified Mrs. Doyle and respondent had a wonderful relationship.  Based on the witnesses' testimony and the reports of the guardian 
ad
 
litem
, the court determined it was in Mrs. Doyle's best interest for petitioners to act as her guardians.  We do not find the trial court abused its discretion in making this determination.   

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, J., specially concurs.

COOK, P.J., dissents.

JUSTICE TURNER, specially concurring:

I agree with the majority opinion affirming the trial court's judgment.  I write separately for the reasons that follow.

First, the majority's opinion concludes the question of whether an incompetent individual can revoke a power of attorney need not be decided.  I would find that such an individual cannot do so.

"'From the time a person is adjudged to be distracted and incapable of caring for his property and effects, until, if ever, he is adjudged to be restored, he has no more legal power to act for himself than as if he were dead.  A contract made, or release or receipt given, by him has no legal significance.'"  
In re Estate of Kutchins
, 169 Ill. App. 3d 641, 645-46, 523 N.E.2d 1025, 1028 (1988), quoting 
Bradshaw v. Lucas
, 214 Ill. App. 218, 223 (1919).

Once an individual is deemed incompetent, the power to act for onself from a legal standpoint ceases until such time as the incompetency is removed.  Until then, the agent acts in the individual's stead.  It would be illogical to allow an incompetent individual to revoke a power of attorney when the existence of such a document aims to protect that person during his or her incompetency.

Therefore, I would hold an incompetent individual cannot revoke a power of attorney.  Notwithstanding, I agree with the majority opinion that the trial court implicitly revoked respondent's power of attorney pursuant to section 2-10 of the Power of Attorney Act (755 ILCS 45/2-10 (West 2004)). 

Second, I do not agree we need to address the question of whether the term "shall" in section 11a-3(b) of the Probate Act (755 ILCS 5/11a-3(b) (West 2004)) is mandatory or directive.  Here, it is not the disabled adult who attempts to invoke section 11a-3(b).  It is, instead, respondent who does not take issue with the trial court's appointment of a guardian but rather objects to the appointment of petitioners instead of her.  As such, I would find the failure to comply with the 30-day notice provision of section 11a-3(b) was harmless error as to respondent's challenge to the appointment of petitioners.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent.  I would reverse the decision of the trial court, recognize the continued validity of the power of attorney granted by Mrs. Doyle, and remand for further proceedings.  

Prior to 1987, when a person who had granted a power of attorney became incompetent, the power of attorney was automatically revoked.  The reasoning was that only a competent person could grant a power of attorney or continue it in effect.  Article II of the Power of Attorney Act, the Durable Power of Attorney Law (755 ILCS 45/2-1 through 2-11
 (West 2004)) was enacted to change that rule.  The law recognizes it is important that "each individual has the right to appoint an agent to deal with property or make personal and health care decisions for the individual."  755 ILCS 45/2-1 (West 2004).  That right "cannot be fully effective unless the principal may empower the agent to act throughout the principal's lifetime, including during periods of disability."  755 ILCS 45/2-1 (West 2004).  The decision of a competent principal to appoint an agent cannot be overcome by simply appointing a guardian of the person's estate.  Absent a special court order under section 2-10, "a guardian will have no power, duty[,] or liability with respect to any property subject to the agency."  755 ILCS 45/2-10 (West 2004).  

Before a court may supersede the principal's decision to appoint an agent, a petition must be filed and notice given.  755 ILCS 45/2-10 (West 2004).  The court must then find that "the principal lacks the capacity to control or revoke the agency" and either that "the agent is not acting for the benefit of the principal" or "that the agent's action or inaction has caused or threatens substantial harm to the principal's person or property in a manner not authorized or intended by the principal."  755 ILCS 45/2-10 (West 2004).  Only after those findings have been made may the court "order a guardian of the principal's person or estate to exercise any powers of the principal under the agency" or order the guardian to revoke the agency, or enter other orders as the court deems necessary to provide for the best interests of the principal.  755 ILCS 45/2-10 (West 2004).

The whole idea of the Durable Power of Attorney Law is that the decision of a competent principal to appoint an agent should not be easily overcome.  The fact that the court would not have selected the agent selected by the principal is irrelevant;   what is important is what the principal thought best, not what the court thinks is best.  The legislature would not have enacted the Durable Power of Attorney Law if the solution was the appointment of a guardian of the estate; guardians of the estate could be appointed before the Durable Power of Attorney Law was enacted.  The suggestion that whenever a guardian of an estate is appointed any exiting durable power of attorney is revoked is contrary to the spirit and the letter of the Durable Power of Attorney Law.  

A court may appoint a guardian of an estate when it finds that the ward is incapable of managing her estate and it is in the best interests of the ward that the petitioner be appointed.  More is required before a power of attorney may be superseded.  It is not enough, when a power of attorney has been granted, that the court thinks someone else could do a better job.  
Cf
. 
Bania
, 130 Ill. App. 3d at 40, 473 N.E.2d at 492 (in guardianship cases, a disabled person's personal preference is outweighed by what the court thinks is in the disabled person's best interests).  To overcome a power of attorney, the court must make a specific finding that "the agent is not acting for the benefit of the principal" or "that the agent's action or inaction has caused or threatens substantial harm to the principal's person or property in a manner not authorized or intended by the principal."  755 ILCS 45/2-10 (West 2004).  No such finding was made in the formal order entered in this case.  In its oral comments the court stated that "Rose Marie simply wore out" and "[s]he has done her part, and it is now someone else's turn."  The court treated this like any other guardianship case and did not consider whether the facts met the higher standard necessary to overcome a power of attorney.  

Petitioners attempted to overcome the power of attorney, not by presenting a petition under section 2-10, but by having Mrs. Doyle sign a revocation of the power of attorney and then arguing that an incompetent person can revoke a durable power of attorney.  By definition, incompetent persons are incapable of taking any legal action.  It is not necessary for the statute to repeat that obvious fact.  Even looking at the statute, the statute's specific provision that a health care power of attorney "may be revoked by the principal at any time, without regard to the principal's mental or physical condition" (755 ILCS 45/4-6 (West 2004)), makes it clear that agencies to deal with property, where there is no similar provision, cannot be so revoked.  Likewise, the inclusion of a specific procedure for the revocation of agencies to deal with property under section 2-10 indicates that a durable power of attorney cannot be destroyed by simply handing an incompetent a piece of paper to sign.  Despite the specific requirements of section 2-10, there was no petition filed in this case, no notice, and no findings.

Courts often deal with situations where an elderly person is cared for by a child living in her community while other children live at a distance.  Sometimes the stress of day-to-day living and contact causes the elderly person to prefer the children she seldom sees over her caretaker.  On the other hand, sometimes the caretaker takes advantage of the relationship.  The language of section 2-10, however, is interesting.  It is not enough to revoke a durable agency that there is harm to the principal's person or property.  To revoke there must be substantial harm to the principal's person or property "in a manner not authorized or intended by the principal."  755 ILCS 45/2-10 (West 2004).  Sometimes the principal intends for the child who provides her care to receive more than the children at a distance.  An infinite variety of fact situations is possible.  It is not clear what the situation is here.  The trial court must determine whether there is a basis for setting aside the power of attorney under section 2-10.  Simply appointing a guardian does not do so.