Docket No. 100668.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

GOVERNMENTAL INTERINSURANCE EXCHANGE *et al.*, Appellants, v. JAY S. JUDGE *et al.*, Appellees.

*Opinion filed May 18, 2006.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices McMorrow, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Chief Justice Thomas took no part in the decision.

**OPINION**

Plaintiffs, Governmental Interinsurance Exchange (GIE) and Kendall County (County), brought a legal malpractice action in the circuit court of McLean County against attorney Jay S. Judge and the law firms of Judge, James & Dutton, Ltd., and Judge & James, Ltd. (Judge defendants); and attorney Mary E. Dickson and the law firm of Bond, Mork & Dickson, P.C. (Dickson defendants). Plaintiffs claimed that defendants were negligent by failing to timely file an appeal from an adverse judgment in prior litigation in which defendants represented GIE's insured, the County. The circuit court entered partial summary judgment in favor of plaintiffs on the issues of duty and breach of duty. However, the circuit court subsequently entered summary judgment in favor of defendants on the issue of proximate cause.

Plaintiffs appealed the summary judgment in favor of defendants on the issue of proximate cause. A divided panel of the appellate court affirmed the judgment. 356 Ill. App. 3d 264. We allowed plaintiffs' petition for leave to appeal (177 Ill. 2d R. 315(a)), and now affirm the judgment of the appellate court.

## I. BACKGROUND

The proceedings below were conducted in the context of the following legal principles. In an action for legal malpractice the plaintiff must plead and prove that: the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship; that the defendant breached that duty; and that as a proximate result, the plaintiff suffered injury (*Sexton v. Smith*, 112 Ill. 2d 187, 193 (1986)) in the form of actual damages (*Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999)). "Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306-07 (2005).

In cases involving litigation, no legal malpractice exists unless the attorney's negligence resulted in the loss of an underlying cause of action. Accordingly, the burden of pleading and proving actual damages requires establishing that "but for"

the attorney's negligence, the client would have been successful in the underlying suit. See *Sheppard v. Krol*, 218 Ill. App. 3d 254, 256-57 (1991); *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 122 (1986); *Bartholomew v. Crockett*, 131 Ill. App. 3d 456, 465 (1985). In a legal malpractice action alleging that an attorney failed to perfect an appeal, the client must prove that he or she would have been successful on appeal if the appeal had properly been perfected. See *Environmental Control Systems, Inc. v. Long*, 301 Ill. App. 3d 612, 621 (1998); *Gillion v. Tieman*, 86 Ill. App. 3d 147, 150 (1980) ("To succeed in her malpractice claim, [plaintiff] would have been required to prove damages caused by the defendant's failure to file a timely notice of appeal. To prove damages, she would have to show that an appeal would have been successful"); accord *Jones v. Psimos*, 882 F.2d 1277 (7th Cir. 1989) (same; applying Indiana law). Thus, a legal malpractice plaintiff must litigate a "case within a case." See *Eastman*, 188 Ill. 2d at 411 (collecting authorities). These principles provide the lens through which we view the following pertinent facts.

## A. Underlying Case: The Automobile Accident

The trial of the underlying case adduced the following pertinent facts. Galena Road has two lanes and runs generally east-west. In 1978, the County assumed authority over Galena Road, commissioned a preconstruction profile of the road, and developed an improvement plan. The County resurfaced the road and striped the center of the road with a skip-dash, or broken yellow line, indicating that passing vehicles is permissible.

Expert testimony established that the 1978 placement of the broken yellow line conformed with guidelines on adequate sight distances mandated by the Illinois Manual on Uniform Traffic Control Devices (Illinois Manual) (formerly codified at 92 Ill. Adm. Code §546.100 *et seq.* (1985), now published as Illinois Department of Transportation, Illinois Manual on Uniform Traffic Control Devices (2003)). Pursuant to these guidelines, passing vehicles is permissible only where sight distances are adequate. If an engineering study concludes that sight distances are inadequate, a no-passing zone must be

installed. In 1984, the Illinois Manual lowered the minimal sight distance. This reduction rendered inadequate the sight distance on that portion of Galena Road where the accident subsequently occurred. In 1993, the County resurfaced Galena Road and restriped the center of the road with the same broken yellow line that it had placed in 1978.

On a November evening in 1994, Sandra Wittenmyer was driving westbound on Galena Road. Aaron Gesell was driving eastbound. As Gesell was passing another eastbound vehicle, he collided head-on with Wittenmyer in the westbound lane. Gesell's and Wittenmyer's automobiles collided at the apex of a rise in Galena Road. Gesell was traveling at a speed significantly higher than the posted 55-miles-per-hour speed limit. Gesell stated that he passed the eastbound vehicle ahead of him because he knew that a broken yellow line indicated that passing vehicles was permissible. Also, according to Gesell, he was not aware that the rise in Galena Road would have obstructed his view of oncoming traffic. As a result of the collision, Wittenmyer suffered severe and permanent injuries.

In January 1995, Sandra and her husband filed a lawsuit against Gesell. In October 1995, the Wittenmyers added the County as a defendant and Gesell brought a third-party contribution action against the County. Between November 1995 and June 1997, GIE, the County's insurer, retained the Dickson defendants and the Judge defendants to represent the County.

Through its attorneys, the County moved for summary judgment, contending that section 3–104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3–104 (West 1994)) immunized the County from liability. The trial court denied the County's motion for summary judgment, and the case proceeded to a jury trial. On October 30, 1998, the jury returned a verdict in favor of the Wittenmyers. The jury awarded $4.5 million in damages to Sandra against Gesell and the County, apportioning 20% of the fault to Gesell and 80% of the fault to the County. The jury also awarded $500,000 in

damages to Sandra's husband. On Gesell's counterclaim against the County, the jury found the County 50% at fault.

On November 25, 1998, the County filed a posttrial motion. The County also moved to file a supplemental posttrial motion, alleging that its attorneys had only very recently received the report of proceedings. On December 3, 1998, the trial court denied both of the County's motions.

On December 31, 1998, the County filed a notice of appeal from the judgment entered on the jury verdict and from the trial court's denial of its posttrial motions. On the same day, the County also presented to the trial court an emergency motion for leave to file a supplemental posttrial motion. The emergency motion was premised on the impending appeal deadline of January 4, 1999, *i.e.*, 30 days after the trial court's December 3, 1998, denial of the County's posttrial motions. The County alleged that, based on this deadline, it was necessary for the County to seek leave to file a supplemental posttrial motion, which contained five additional grounds for reversal based upon trial errors. The trial court granted the motion in an order stating: "Final orders not having been entered in this cause, the time for filing notice of appeal in this matter is hereby extended until a final order is entered."

On January 12, 1999, the County filed an amended supplemental posttrial motion. On February 16, 1999, the trial court denied the motion, ruling that the court lacked jurisdiction to hear the motion and, alternatively, that the motion was denied "as a matter of substance." On March 15, 1999, the County filed a motion with the appellate court, Second District, seeking leave to amend its notice of appeal to include the trial court's February 16 order denying the County's supplemental posttrial motion. The appellate court initially granted the motion, but on May 7, 1999, the appellate court vacated that order and struck the County's March 15 amended notice of appeal. The appellate court also denied Wittenmyer's and Gesell's motions to dismiss the appeal, finding that the County's December 31, 1998, notice of appeal preserved the grounds raised in the County's first posttrial motion.

On July 16, 1999, Gesell filed a motion in the appellate court, contending that the County's December 31, 1998, notice

of appeal was prematurely filed and the County never filed a new notice of appeal. On December 14, 1999, the appellate court, in an unpublished order, reversed its prior ruling that the December 31, 1998, notice of appeal was timely. *Wittenmyer v. Gesell*, No. 2–99–0041 (December 14, 1999) (unpublished order under Supreme Court Rule 23). In its order, the appellate court stated that the County was required to withdraw its December 31, 1998, notice of appeal when it simultaneously filed its supplemental posttrial motion. The appellate court observed that, after the trial court denied the County's amended supplemental posttrial motion on February 16, 1998, the County failed to file a timely notice of appeal. Therefore, the appellate court held that the County's original notice of appeal was premature and ineffectual. Consequently, according to the appellate court, the County's March 15, 1999, motion to amend its notice of appeal was also without effect. The appellate court denied the County's request for reconsideration, and this court denied the County's petition for leave to appeal. *Wittenmyer v. Gesell*, 189 Ill. 2d 683 (2000) (table).

## B. Malpractice Action

GIE and the County brought this legal malpractice action against Judge individually and his law firm and successor law firm, and Dickson individually and her law firm. In their ultimate complaint, plaintiffs pled the requisite elements. Plaintiffs pled the element of duty. Plaintiffs alleged that they had an attorney-client relationship with defendants regarding the underlying case, whereby defendants "had a duty to represent Plaintiffs with the reasonable care, skill and diligence possessed by attorneys" who, in the case of defendants, held themselves "out to the public as having specialized experience in the handling of trial, post-trial matters and appeal of civil cases" such as the underlying case. Plaintiffs also alleged that defendants "agreed to continue representing the interests of Plaintiffs including, but not limited to, taking the steps necessary to overturn the adverse judgment in *** *Wittenmyer*

*** including, but not limited to, pursuing an appeal on the merits."

Plaintiffs pled breach of the duty. Plaintiffs alleged that, for the reasons expressed by the appellate court in its December 14, 1999, Rule 23 order, defendants breached their duties owed to plaintiffs and failed to properly preserve Kendall County's appellate rights concerning the adverse judgment in the underlying case. Further, defendants' conduct constituted "a breach of [defendants'] duty to exercise reasonable care, skill and diligence on behalf of Plaintiffs."

Plaintiffs pled the elements of proximate cause and damages. Plaintiffs alleged: "But for the negligence of [defendants], the appeal in *** *Wittenmyer* *** would have been successful, and the judgment against Kendall County would have been overturned." Plaintiffs also alleged that as a result of defendants' negligence, plaintiffs sustained damages including: payment of the judgment and accrued interest entered against the County, the lost time and value of the monies paid by plaintiffs in satisfaction of the judgment, and plaintiffs' legal expenses for preparation of an appeal that the County was denied the opportunity to pursue. According to plaintiffs, the damages they had sustained "were proximately caused by the breach of duties by [defendants], as set forth above."

Discovery ensued. In an interrogatory, defendants asked plaintiffs to state the legal grounds plaintiffs were alleging that the appellate court would have reversed the judgment against the County in the underlying case. Plaintiffs answered that, had the underlying appeal been perfected, the meritorious ground for reversal would have been what defendant Judge had advised plaintiffs, *i.e.*, governmental tort immunity pursuant to several sections of the Tort Immunity Act.

Plaintiffs moved for partial summary judgment on the issues of duty and breach of duty. Plaintiffs contended that the circuit court could determine defendants' breach of duty as a matter of law based solely on the appellate court's order in *Wittenmyer v. Gesell*, No. 2–99–0041 (December 14, 1999) (unpublished order under Supreme Court Rule 23). Defendants responded and filed a joint cross-motion for summary judgment, contending that the issue of breach of duty was one

of fact for the jury, which must generally be established through expert testimony. At the close of a hearing on March 20, 2003, the circuit court found that the record in the underlying case, including the appellate court's dismissal of the underlying appeal in *Wittenmyer v. Gesell*, No. 2–99–0041 (December 14, 1999) (unpublished order under Supreme Court Rule 23), established the factual record upon which the court could rule. The circuit court granted plaintiffs' motion for partial summary judgment and denied defendants' cross-motion for summary judgment. The court found that defendants owed plaintiffs a duty to perfect the appeal and that defendants' failure to do so constituted a breach of that duty. The court then scheduled further proceedings on the issues of proximate cause and damages.

Defendants subsequently filed a joint motion for summary judgment on the issues of proximate cause and damages. Defendants contended that, regardless of whether they had perfected the appeal in the underlying case, the appeal would not have been successful. Defendants argued that, had the appellate court in the underlying case reviewed the County's appeal on the merits, the court would not have reversed the judgment in the underlying case. Defendants also contended that the circuit court, and not a jury, should decide the question of whether the appeal of the underlying case would have been successful. Opposing the motion for summary judgment, plaintiffs contended that the tort immunity arguments defendants asserted on behalf of the County in the underlying case were correct and, had defendants competently perfected the underlying appeal, the appellate court would have reversed the judgment entered against the County. Plaintiffs also contended that the circuit court should deny defendants' motion for summary judgment because the question of the hypothetical outcome of the County's dismissed appeal was a question of fact for a jury.

At the close of a hearing, the circuit court ruled that the issue of proximate cause in an appellate legal malpractice action is a question of law that should be decided by the court. The parties then agreed that the circuit court would set the case for an appellate-style oral argument, and that the circuit

court would confine its review to the trial court record and the appellate briefs in the underlying case.

The circuit court held a hearing in which the parties argued the governmental tort immunity issue that was briefed to the appellate court in the underlying case. In a written order, the circuit court granted defendants' motion for summary judgment, finding that the appellate court in the underlying case would not have reversed the judgment based on the immunity issue. The circuit court's analysis focused on section 3–104 of the Tort Immunity Act (745 ILCS 10/3–104 (West 1994)). The circuit court interpreted section 3–104 as immunizing only the failure to initially provide traffic control devices, and not the incorrect placement of those devices. The court reasoned that if the county had failed to stripe Galena Road at all, it would have been immunized under section 3–104. However, according to the circuit court, the County initially acted by installing the passing-permitted zone in 1978. Further, when the County restriped the road in 1993, the County was obliged to do so in compliance with the Illinois Manual but failed to do so. Therefore, according to the circuit court, the trial court in the underlying case was correct to deny the County's motion for summary judgment based on section 3–104 immunity. Consequently, the circuit court concluded that the appellate court would have affirmed the trial court's decision regarding governmental tort immunity and would not have reversed the judgment against the County in the underlying case.

Plaintiffs appealed the circuit court's grant of summary judgment in favor of defendants on the proximate cause issue. The Judge defendants and the Dickson defendants not only defended the summary judgment on the issue of proximate cause, but also raised alternative grounds for affirming the judgment. A divided panel of the appellate court affirmed the circuit court's grant of summary judgment to the defendants on the issue of proximate cause. 356 Ill. App. 3d 264. Initially, the appellate court held that the proximate cause issue was an issue of law for a court to decide and not a question of fact for a jury. 356 Ill. App. 3d at 270-72. The court next held that section 3–104 of the Tort Immunity Act did not immunize the County in the underlying case. The court reasoned that the

1993 restriping of Galena Road did not constitute an initial failure to place a traffic control device, which section 3–104 immunizes, but rather an improper placement of a traffic control device, which section 3–104 does not immunize. Consequently, the appellate court agreed with the circuit court that, in the underlying case, the trial court correctly rejected the County's assertion of section 3–104 immunity, and the appellate court would have affirmed the judgment. Therefore, in the legal malpractice action, the appellate court upheld the circuit court's grant of summary judgment in favor of defendants on the issue of proximate cause. 356 Ill. App. 3d at 273-77.

Presiding Justice Cook dissented solely on the issue of section 3–104 immunity. 356 Ill. App. 3d at 277 (Cook, P.J., dissenting). The dissenting justice disagreed with the majority's characterization of the County's action as the improper placement of a passing zone. Rather, the dissenting justice viewed the County's action as failing to initially provide a no-passing zone. Presiding Justice Cook reasoned:

> "It is incorrect to say that a broken yellow line is a passing zone. Rather, the absence of a solid yellow line is a passing zone. Even a roadway without a centerline is a passing zone. *** The absence of the solid yellow line does not interfere with the integrity of the broken yellow line." 356 Ill. App. 3d at 277-78 (Cook, P.J., dissenting).

The dissenting justice opined that the failure to initially place this traffic roadway marking, *i.e.*, the solid yellow line, was immunized under section 3–104. 356 Ill. App. 3d at 278-79 (Cook, P.J., dissenting). Neither the appellate court majority nor the dissent mentioned defendants' alternative grounds for affirming the circuit court judgment.

We allowed GIE and the County's petition for leave to appeal. 177 Ill. 2d R. 315(a). We subsequently granted leave to the following to file *amicus curiae* briefs in support of GIE and the County: Illinois Association of County Engineers, Intergovernmental Risk Management Agency, Property Casualty Insurers Association of America, and Cook County. We also granted leave to the Illinois Trial Lawyers Association

˘10˘

to file an *amicus curiae* brief in support of defendants. See 155 Ill. 2d R. 345. Additional pertinent background will be discussed in the context of our analysis of the issues.

## II. ANALYSIS

Before this court, plaintiffs assign error to the two holdings of the appellate court: (1) the proximate cause issue was an issue of law for the court to decide, and (2) section 3–104 of the Tort Immunity Act did not immunize the County in the underlying case. Not limiting their contentions to a defense of the appellate court's reasoning, defendants offer an alternative ground for affirming the summary judgment in their favor. Further, solely if this court overturns the summary judgment in their favor, defendants request, as cross-relief, that we reverse the partial summary judgment in favor of plaintiffs on the issues of duty and breach of duty. However, a court may assume, *arguendo*, the existence of a duty and its breach to address the issue of proximate cause. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). Because our review of the two issues that the appellate court addressed is sufficient to resolve this appeal, we need not and do not discuss defendants' alternative contentions. See, *e.g.*, *Abrams*, 211 Ill. 2d at 256-57.

### A. Proximate Cause: Question of Law or Fact?

Prior to granting summary judgment in favor of defendants on the issue of proximate cause, the circuit court ruled that the issue of proximate cause in an appellate legal malpractice action is a question of law for the court to decide and not a question of fact for a jury. The appellate court upheld this ruling. 356 Ill. App. 3d at 270-72.

Generally, the issue of what is the proximate cause of an injury is a question of fact for a jury to determine based on its consideration of all of the evidence. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 436 (1991), quoting *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 395 (1976), quoting *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 381 (1943). Specifically: "The issue of proximate causation in a legal malpractice setting is generally considered a factual issue to be decided by the trier

of fact." *Renshaw v. Black*, 299 Ill. App. 3d 412, 417-18 (1998) (and cases cited therein). This court has explained that issues that could cause reasonable persons to reach different results should never be determined as questions of law. The debatable qualities of issues such as proximate cause, the fact that fair-minded persons might reach different conclusions, emphasize the appropriateness of leaving such issues to a fact-finding body, *i.e.*, the jury. *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 84 (1954).

In the present case, plaintiffs contend that the issue of whether defendants' appellate legal malpractice proximately caused plaintiffs' injury was likewise a question of fact for a jury to determine. Plaintiffs argue that the appellate court's holding in the present case distinguishes attorneys who commit appellate malpractice from other negligent professionals, and insulates negligent appellate attorneys from a jury determination of whether their negligence caused injury. Plaintiffs go so far as to argue that this result violates the right to a jury trial as guaranteed by the Illinois Constitution. Ill. Const. 1970, art. I, §13. We cannot accept plaintiffs' contention.

It is quite settled that "[t]he interpretation of a statute is a matter of law for the court and appropriate for summary judgment." *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999) (collecting cases). This principle does not usurp the fact-finding role of a jury, but rather reflects the constitutionally recognized role of the court to interpret and declare the law. The Illinois Constitution places the state's judicial power in the courts. Ill. Const. 1970, art. VI, §1. "The application of principles of law is inherently a judicial function." *Wright v. Central Du Page Hospital Ass'n*, 63 Ill. 2d 313, 322 (1976); see *Environmental Control Systems*, 301 Ill. App. 3d at 621 (stating that the "judicial power includes the power to determine and analyze the applicable law").

In this appellate legal malpractice action, the negligence that plaintiffs alleged defendants committed was the failure to perfect the appeal to the appellate court in the underlying case. Accordingly, for plaintiffs to prevail, they must prove that, but for defendants' failure, the appellate court in the underlying case would have held that the Tort Immunity Act immunized

the County from liability. In other words: "If the County should not have been afforded protection from the verdict under the Tort Immunity Act, then defendants' failure to perfect the appeal was not the proximate cause of the County's damages." 356 Ill. App. 3d at 272. Thus, the success of plaintiffs' legal malpractice action rests upon the question of how the appellate court in the underlying case would have interpreted the Tort Immunity Act. This was a question of law for the circuit court.

The circuit court's determination of the correct interpretation of the Tort Immunity Act and whether the County should be immune thereunder does not turn on questions of fact. We agree with the appellate court that "whether defendants told plaintiffs prior to the appeal of the underlying traffic accident case that the appellate court was likely to reverse based upon tort immunity and whether such statement was truthful does not affect the proper application of the Tort Immunity Act." 356 Ill. App. 3d at 272.

Although this case presents an issue of statutory interpretation, which is clearly an issue of law for the court, we do not see how the issue of proximate cause in an appellate legal malpractice action could be a question of fact for a jury. The issue of proximate cause in an appellate legal malpractice action "must *** be made by the trial judge as an issue of law, based on review of the transcript and record of the underlying action, the argument of counsel, and subject to the same rules of review as should have been applied to the [underlying] appeal." 3 R. Mallen & J. Smith, Legal Malpractice §30.52, at 1257 (2005).

Indeed, the vast majority of courts that have addressed this issue have concluded that the issue of proximate cause in an appellate legal malpractice action presents a question of law for the court and not a question of fact for a jury. In addition to the appellate court panel in the present case, the appellate court in *Environmental Control Systems*, 301 Ill. App. 3d at 620-22, so held. Other decisions so holding include *Richards v. Knuchel*, 327 Mont. 249, 254-55, 115 P.3d 189, 192-93 (2005) (discussing cases), *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 718 A.2d 186, 190-91 (Me. 1998) (agreeing with "[n]umerous courts" that have recognized rule), *Sturgis v.*

*Skokos*, 335 Ark. 41, 51, 977 S.W.2d 217, 221-22 (1998) (agreeing with "majority rule"), *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627-28 (Tex. 1989) (collecting cases), *Daugert v. Pappas*, 104 Wash. 2d 254, 258, 704 P.2d 600, 603-04 (1985) (collecting cases); *Tinelli v. Redl*, 199 F.3d 603, 606-07 (2d Cir. 1999) (collecting cases; applying New York law), and *Jones v. Psimos*, 882 F.2d 1277, 1281 (7th Cir. 1989) (applying Indiana law). "The rationale for these decisions is clear. The overall inquiry is whether the client would have been successful if the attorney had timely filed the appeal. *** Underlying the broad inquiry, however, are questions bearing legal analysis." *Daugert*, 104 Wash. 2d at 258, 704 P. 2d at 604. As the court in *Millhouse* explained:

> "The question of whether an appeal would have been successful depends on an analysis of the law and the procedural rules. [The malpractice plaintiff's] position that the jury should make this determination as a question of fact would require the jury to sit as appellate judges, review the trial record and briefs, and decide whether the trial court committed reversible error. A judge is clearly in a better position to make this determination. Resolving legal issues on appeal is an area exclusively within the province of judges; a court is qualified in a way a jury is not to determine the merits and probable outcome of an appeal. Thus, in cases of appellate legal malpractice, where the issue of causation hinges on the *** outcome of an [underlying] appeal, the issue is to be resolved by the court as a question of law." *Millhouse*, 775 S.W.2d at 628.

"To rule otherwise–and hold that a jury should decide how an appellate court would have ruled–would misconstrue the very nature of appellate review. Appellate courts decide matters as 'issue[s] of law, based upon review of the transcript and . . . the argument of counsel.' [Citations.]" *Tinelli*, 199 F.3d at 607 (applying New York law).

Plaintiffs cite *Andrews v. Saylor*, 134 N.M. 545, 80 P.3d 482 (App. 2003), in an attempt to lighten this weight of authority. In *Andrews*, the New Mexico Court of Appeals held that the trial court in an appellate legal malpractice action erred in deciding

˘14˘

whether the appeal in the underlying case would have been successful; the court held that the issue of proximate cause in an appellate legal malpractice action is a question of fact. As a learned treatise described *Andrews*: "The court did not discuss or even reference the virtually uniform case law to the contrary." 3 R. Mallen & J. Smith, Legal Malpractice §30.52, at 1259 (2005).

In the present case, the appellate court expressly limited its holding to the facts presented in this case, *i.e.*, an appellate legal malpractice action where the success of the underlying case rests upon a question of law. 356 Ill. App. 3d at 272. However, we agree with the circuit court, and so hold, that the issue of proximate cause in an appellate legal malpractice action is inherently a question of law for the court and not a question of fact for the jury.

### B. Section 3–104 Tort Immunity

The circuit court in the legal appellate malpractice action ruled that section 3–104 of the Tort Immunity Act (745 ILCS 10/3–104 (West 1994)) did not immunize the County in the underlying case. According to the circuit court, had defendants perfected an appeal to the appellate court in the underlying case, the appellate court would not have reversed the judgment against the County based on governmental tort immunity. Therefore, because the legal appellate malpractice action lacked the element of proximate cause, defendants were entitled to a judgment as a matter of law and the circuit court granted summary judgment in favor of defendants. The appellate court upheld this ruling. 356 Ill. App. 3d at 273-77.

Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2004). If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). Our review is *de novo*. *Masterson*, 188 Ill. 2d at 551.

The Tort Immunity Act adopted the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific governmental functions. Therefore, a governmental unit is liable in tort on the same basis as a private tortfeasor unless a valid statute dealing with tort immunity provides an exception, or a condition, to that liability. See *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385-86 (1996). Further, the Tort Immunity Act codifies the common law duty of a local governmental unit "to exercise ordinary care to maintain its property in a reasonably safe condition." 745 ILCS 10/3–102(a) (West 2004). This section does not create any new duties; the Act delineates immunities and defenses in subsequent sections. *Wagner v. City of Chicago*, 166 Ill. 2d 144, 152-53 (1995); accord *Barnett*, 171 Ill. 2d at 386; *Anderson v. Alberto-Culver USA, Inc.*, 317 Ill. App. 3d 1104, 1111-12 (2000). Thus, we must look to the common law and other statutes to determine whether the County owed the Wittenmyers and Gesell a legal duty.

The applicable common law duty is quite established:

> "At common law, a municipality had a duty to maintain its property in a safe condition, but this duty did *not* extend to creating or erecting public improvements. [Citations.] Once a public improvement was actually constructed, the municipality had a duty to maintain it in a reasonably safe condition; however, no liability could be imposed for the failure to undertake the improvement in the first place." *West v. Kirkham*, 147 Ill. 2d 1, 14 (1992).

Accord *First National Bank in De Kalb v. City of Aurora*, 71 Ill. 2d 1, 11 (1978) ("This court has clearly established the rule that once a governmental unit 'adopts a plan in the making of public improvements,' it owes a duty to a plaintiff to maintain those improvements"); *Thorsen v. City of Chicago*, 74 Ill. App. 3d 98, 107 (1979) (collecting cases); *Smith v. Godin*, 61 Ill. App. 3d 480, 482 (1978) (traffic control devices). Further, section 11–304 of the Illinois Vehicle Code (625 ILCS 5/11–304 (West 1994)), by mandating compliance with the Illinois Manual, establishes a defendant's duty of reasonable care. *Snyder v. Curran Township*, 167 Ill. 2d 466, 472 (1995).

In its summary judgment motion in the underlying case, the County did not contest this common law duty owed to the Wittenmyers and Gesell. Rather, it contended that section 3–104 of the Tort Immunity Act provided it absolute immunity from liability for a breach of this duty. Section 3–104 provides as follows:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the *failure to initially provide* regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Emphasis added.) 745 ILCS 10/3–104 (West 1994).

Before this court, plaintiffs do not deny the existence of the County's above-referenced duty but claim immunity under section 3–104. Plaintiffs acknowledge that the statutory language immunizes the failure to initially provide road markings, but not the improper placement of markings. However, plaintiffs and supporting *amici* contend that by failing to paint a no-passing line on Galena Road, the County committed an immunized failure of initial placement. Defendants and supporting *amicus* argue that the County committed non-immunized improper placement by its 1993 restriping of Galena Road with a broken yellow line that permitted passing. The circuit and appellate courts agreed with defendants. We do likewise.

Section 11–304 of the Illinois Vehicle Code provides that, when placing traffic control devices, local authorities "shall," *i.e.*, must, follow the Illinois Manual. See 625 ILCS 5/11–304 (West 1994). The Illinois Manual states that a broken yellow line indicates a two-direction passing zone. On those roads, passing is permitted for traffic traveling in either direction. In contrast, a broken yellow line and a solid yellow line indicates a one-direction no-passing zone. On those roads, passing is permitted only for the traffic traveling adjacent to the broken line. Reviewing the Illinois Manual and the Illinois Rules of the

Road[1], the appellate court correctly concluded that a broken or skip-dash yellow line, by itself, is a traffic control device. In contrast, a solid yellow line, by itself, is not a traffic control device, because a one-direction no-passing zone requires both a broken yellow line and a solid yellow line, and a two-direction no-passing zone requires two solid yellow lines. 356 Ill. App. 3d at 274.

Applying these rules to the underlying case, it is clear that the County's 1993 restriping of Galena Road did not constitute an immunized failure to initially place a solid yellow line. The question is not whether the County initially installed the *correct* traffic control marking. Rather, the question is whether the County made any improvement to Galena Road, thereby undertaking the duty to maintain that improvement in a reasonably safe condition. The plain language of section 3–104 immunizes only the failure to initially provide traffic control devices. "Where the language of a statutory provision is clear, a court must give it effect." *West*, 147 Ill. 2d at 6.      In 1978, the County developed an improvement plan for Galena Road, resurfaced the road, and then–initially–improved the road with a traffic control marking, *i.e.*, the two-direction passing zone. Once the road was improved, the County had the duty to use ordinary care to maintain the road in a reasonably safe condition. See 745 ILCS 10/3–102(a) (West 1994); *First National Bank*, 71 Ill. 2d at 11. When the County resurfaced Galena Road in 1993, the County's duty to maintain the road in a reasonably safe condition required the County to conform the then-existing traffic control marking to the Illinois Manual by

---

[1]We acknowledge that the Illinois Rules of the Road "is intended as a tool for drivers and should not be cited as a legal authority in court." Illinois Rules of the Road 1. However, as did the appellate court, we refer to this publication precisely to show drivers' common understanding of these road markings.

replacing the two-direction passing zone with a no-passing zone. See *Snyder*, 167 Ill. 2d at 472. However, the County breached its duty by negligently replacing the passing zone. The County's negligent act constituted a non-immunized improper placement.

As support for their contention, plaintiffs rely on the appellate court dissent. The appellate court majority adequately refutes the dissenting justice, who opined that the County failed to initially provide a no-passing zone. 356 Ill. App. 3d at 278-79 (Cook, P.J., dissenting). "The above regulations clearly establish that, contrary to the dissent's statement *** a broken yellow line does indicate a passing zone. Such an indication exists regardless of whether a driver can pass on a roadway without a centerline. *** [Citation.] Therefore, a broken yellow line, by itself, is a traffic-control device." 356 Ill. App. 3d at 274. Further, the dissenting justice curiously opined: "The absence of the solid yellow line does not interfere with the integrity of the broken yellow line." 356 Ill. App. 3d at 277-78 (Cook, P.J., dissenting). However, we agree with the appellate court majority that the absence of the solid yellow line gave the erroneous traffic indication on Galena Road and was a cause of the accident. 356 Ill. App. 3d at 274.

Plaintiffs rely on *West v. Kirkham* in support of their position that section 3–104 of the Tort Immunity Act immunized the County. In *West*, the plaintiff collided with another vehicle in the process of making a left turn. The plaintiff sued the city of Urbana, claiming that the city had a duty to provide a left-turn arrow for her direction of traffic. Plaintiff argued, *inter alia*, that section 3–104's immunity for the failure to initially provide road markings did not apply in that case because the city had previously installed a left-turn arrow for traffic traveling in the opposite direction at the intersection where the accident occurred. Thus, the plaintiff argued that the city's alleged negligence constituted a non-immunized improper placement. *West*, 147 Ill. 2d at 10. This court rejected this argument:

> "We find that the exception to section 3–104 urged by plaintiff and accepted by the appellate court is unwarranted and would effectively swallow the section's immunity entirely. The creative plaintiff, seeking to

premise an action on the failure to provide a particular traffic device, could always circumvent section 3–104 by finding and pointing out some *other* traffic device that *was* provided. We do not believe that the legislature intended such a narrow construction of section 3–104 ***." (Emphases in original.) *West*, 147 Ill. 2d at 10.

This court in *West* also explained how section 3–104 furthers the policy behind the Tort Immunity Act, which is to protect local governmental units from liability arising from "the operation of government." 745 ILCS 10/1–101.1 (West 1994). This court reasoned:

> "The 'operation of government' necessarily encompasses the policy decisions made by a municipality; that is, those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests. The decision whether to install a traffic signal requires the municipal traffic planner to balance a host of competing interests, among them, safety, convenience and cost. *** [T]his is not the sort of decision that should be second-guessed by the courts. Were such second-guessing permitted, the traffic planner would be more concerned with avoiding possible litigation than with using his best judgment to properly balance the competing interests. Thus, instead of seeking the best balance of safety, convenience and cost, the traffic planner would concern himself only with whether it could later be argued that the regulation provided could have possibly been safer. Excessive regulation, with no corresponding gain in safety, convenience or cost efficiency, would be the natural result. The legislature recognized this by enacting section 3–104 and expressly immunizing the failure to provide a traffic control device or sign." *West*, 147 Ill. 2d at 11-12.

The appellate court correctly distinguished *West* from the present case.

First, this is not a case where a creative plaintiff circumvents section 3–104 by pointing to some *other* traffic

control device. Rather, the County's mistake in the present case involves the erroneous placement of one traffic signal, the centerline of Galena Road. Second, in the present case, the County's failure to correct the erroneous traffic control marking was *not* a result of the County's balancing "a host of competing interests, among them, safety, convenience and cost." *West*, 147 Ill. 2d at 11. Rather, the Illinois Manual states: " 'markings that are no longer applicable for roadway conditions or restrictions and that might cause confusion for the road user shall be removed or obliterated to be unidentifiable as a marking as soon as practical.' " 356 Ill. App. 3d at 276. Thus, the County's failure to correct the erroneous traffic control marking was simply a negligent oversight and not the sort of decision immunized by section 3–104. "Because of the above distinctions, to hold the County liable in the instant case does not reflect the type of second-guessing that *West* prohibits." 356 Ill. App. 3d at 276; see, *e.g.*, *Wood v. Village of Grayslake*, 229 Ill. App. 3d 343, 354, 556 (1992) (holding that section 3–109 immunizes the failure to initially provide traffic control devices, but not the failure to maintain existing traffic control devices).

The record in the underlying case demonstrates that, in 1993, the County negligently replaced the erroneous two-direction passing zone on Galena Road. Because section 3–104 of the Tort Immunity Act immunizes only the failure to initially provide traffic control markings, the County was not immune from this improper placement. Thus, the circuit court in this appellate legal malpractice action correctly concluded: the trial court in the underlying case correctly denied the County's motion for summary judgment; had defendants perfected the appeal in the underlying case, the appellate court would not have reversed the judgment based on section 3–104; and, therefore, defendants' negligence in failing to perfect the appeal was not the proximate cause of plaintiff's injury. Consequently, the element of proximate cause being absent from plaintiffs' case, the circuit court properly granted summary judgment in favor of defendants. The appellate court correctly upheld the judgment of the circuit court.

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

CHIEF JUSTICE THOMAS took no part in the consideration or decision of this case.