NO. 4-06-1008    Filed Eff. 9/5/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SHANNON W. FORD, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Champaign County |
| ROUND BARN TRUE VALUE, INC., d/b/a | ) | No. 05L243 |
| SUNNYCREST TRUE VALUE; BODY FIRM, | ) | |
| INC., d/b/a GOLD'S GYM; and DANIEL | ) | Honorable |
| MARK McCULLEY, d/b/a GOLD'S GYM, | ) | Jeffrey B. Ford, |
|     Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In October 2005, plaintiff, Shannon W. Ford, filed a three-count negligence suit against defendants, Round Barn True Value, Inc., doing business as Sunnycrest True Value (True Value); Body Firm, Inc., doing business as Gold's Gym; and Daniel Mark McCulley, doing business as Gold's Gym (Body Firm and McCulley are hereinafter collectively referred to as Gold's Gym), for his injury sustained in True Value's parking lot after he had worked out at Gold's Gym. In January 2006, Gold's Gym filed a motion to dismiss plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619 (West 2004)). After a March 2006 hearing, the trial court granted Gold's Gym's motion to dismiss. In June 2006, True Value filed a motion for summary judgment. After an October 2006 hearing, the court granted summary judgment in favor of True Value.

Plaintiff appeals, contending the trial court erred by granting (1) Gold's Gym's motion to dismiss and (2) True Value's motion for summary judgment.  We affirm.

I. BACKGROUND

According to plaintiff's deposition, on October 20, 2003, he had been a member of Gold's Gym on Colorado Avenue in Urbana, Illinois, for approximately a year and half.  Between 7 and 9 p.m. that evening, plaintiff rode his motorcycle to Gold's Gym to work out.  After driving around Gold's Gym's parking lot and observing no empty parking spaces, plaintiff rode his motorcycle into True Value's parking lot, which was adjacent to Gold's Gym.  True Value was closed when plaintiff entered the parking lot.  Plaintiff parked his motorcycle in True Value's parking lot and went into Gold's Gym.  He had parked at True Value when at Gold's Gym on about 20 times prior to that evening.

While plaintiff had never discussed parking at True Value with anyone at Gold's Gym or True Value, Gold's Gym had a sign posted on its front door and bulletin board that stated the following:

"ATTENTION MEMBERS:

<u>TRUE</u> <u>VALUE</u> HAS BEEN KIND ENOUGH TO LET US USE THEIR PARKING LOT--SO *PLEASE* DO NOT ABUSE THIS PRIVILEGE.

PLEASE ONLY PARK ON THE *EAST SIDE* OF THE

LOT **BEFORE 6PM** SO THEY HAVE ROOM FOR THEIR

CUSTOMERS.

THANK YOU FOR BEING COURTEOUS, AND RE-

MEMBER TO SHOP <u>TRUE</u> <u>VALUE</u> FOR ALL YOUR HOUSE-

HOLD NEEDS."  (Emphases in original.)

Plaintiff worked out for about 30 to 45 minutes.  After the workout, plaintiff returned to his motorcycle.  He started the motorcycle and proceeded to the parking lot's exit that faced Philo Avenue at a speed of between 10 to 15 miles per hour.  As plaintiff approached the exit, he slowed down to around three miles per hour to watch for oncoming traffic.  He then spotted several potholes with gravel around them.  Plaintiff was about 10 feet away from the gravel when he saw it.  Plaintiff continued to brake and drove to the left side of one of the potholes to avoid it.  On the exit's decline to the street, plaintiff's motorcycle caught some gravel from the pothole, which caused the motorcycle to tilt toward the left.  Plaintiff put his left foot down to brace the motorcycle and jammed his left tibia against the concrete.  Plaintiff was able to keep the motorcycle up and put the kickstand down.  Plaintiff then fell off the motorcycle because he could not walk.  He had suffered a fracture to his tibial plateau.  At the time of the accident, it was dusk, the weather was warm and clear, and the pavement was dry.

Plaintiff also stated he had driven through the area

where the accident had occurred on prior visits to Gold's Gym. He also indicated he was aware a motorcycle could slip and slide on gravel at low speeds.

In his deposition, Lance Cooper, the True Value manager and son of the owners, testified he was aware of a pothole existing on October 20, 2003, but did not have any recollection of loose gravel inside or around the pothole. Lance described the pothole as shallow and estimated it at no more than an inch in depth. The parking lot was paved with blacktop and could have had broken blacktop, which Lance defined as granules of blacktop. The pothole was located in an area that sloped to the street. After Lance became aware of plaintiff's accident, he inspected the area of the parking lot where the accident occurred. Lance stated the pothole was of shallow depth and that he had personally driven over it. He did see loose blacktop in the area but did not consider it to be a potential hazard.

Lance also indicated he drove a motorcycle and had driven it on True Value's parking lot in the area at issue before October 20, 2003. He denied having encountered loose blacktop or having any problems. Lance believed encountering loose blacktop while slowing down on a motorcycle could present a hazard. He was unaware of any other accidents resulting from the pothole at issue and had no knowledge of anyone complaining about the pothole.

- 4 -

We note other depositions were taken and included in the record but are not necessary to our resolution of the issues on appeal.

On October 19, 2005, plaintiff filed a three-count negligence complaint against True Value and Gold's Gym. In November 2005, True Value filed an answer and asserted three affirmative defenses to plaintiff's complaint. In January 2006, Gold's Gym filed a section 2-619 motion to dismiss, asserting it did not own, maintain, or control the parking lot on which plaintiff was injured. Attached to the motion was an affidavit by McCulley. In the affidavit, he stated that, at the time of the accident, True Value allowed customers visiting Gold's Gym to use its parking lot. Neither he nor Body Firm had any ownership interest in True Value's parking lot. Additionally, neither he nor Body Firm had ever requested, performed, or paid for any upkeep, maintenance, or repairs on True Value's parking lot. Plaintiff filed a response to the motion to dismiss but did not attach any counteraffidavits or in any other way challenge McCulley's affidavit. After a March 2006 hearing, the trial court granted Gold's Gym's motion to dismiss.

In June 2006, True Value filed a motion for summary judgment, asserting (1) it had no duty to warn because the gravel was an open and obvious condition, (2) it did not owe plaintiff a duty of reasonable care because he was a trespasser, (3) the

gravel was not an unreasonably dangerous condition, and (4) True Value did not have actual or constructive notice of the dangerous condition. In September 2006, plaintiff filed a response to True Value's summary judgment motion, to which he attached his affidavit. In his affidavit, plaintiff indicated he was going to exit onto Colorado Avenue, not Philo Avenue as he had stated in his deposition. He also stated that, when he first observed the pothole, he did not see the gravel strewn around it. Plaintiff noted he only saw the pothole from 10 feet away, not the gravel. He went to the left to avoid the pothole and redirected his attention toward the traffic on Colorado Avenue. While he was able to avoid the pothole, he could not avoid the gravel around it. Immediately before encountering the gravel, his attention had been on the traffic on Colorado Avenue. In October 2006, True Value filed a motion to strike plaintiff's affidavit.

In October 2006, the trial court held a joint hearing on True Value's motion for summary judgment and its motion to strike plaintiff's affidavit. While the court did not expressly state it was striking plaintiff's affidavit, the court declared plaintiff was bound by his deposition testimony. The court further found True Value did not owe plaintiff a duty because the condition was open and obvious and that plaintiff was a trespasser at the time of the accident. In accordance with its findings, the court granted summary judgment in favor of True

Value.  This appeal followed.

## II. ANALYSIS

### A. Gold's Gym's Motion To Dismiss

Plaintiff first asserts the trial court erred in granting Gold's Gym's motion to dismiss.

With a motion to dismiss under section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West 2004)), the movant admits the legal sufficiency of the plaintiff's complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim.  Such a motion presents a question of law, and thus our review of the trial court's ruling on the motion is de novo.  DeLuna v. Burciaga, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006).  Moreover, in ruling on a section 2-619 motion to dismiss, a court may consider pleadings, depositions, and affidavits.  When affidavits in support of the motion have not been challenged or contradicted by appropriate methods, the court deems admitted the facts stated in the supporting affidavits. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 262, 807 N.E.2d 439, 447 (2004).

To prevail in a negligence action, a plaintiff's complaint must set forth facts establishing the existence of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach. Marshall v. Burger King Corp., 222 Ill. 2d 422, 430, 856 N.E.2d

1048, 1053 (2006). Citing <u>Hanks v. Mount Prospect Park District</u>, 244 Ill. App. 3d 212, 217-18, 614 N.E.2d 135, 139 (1993), in its motion to dismiss, Gold's Gym asserted plaintiff could not establish it owed him a duty because his injury occurred on land owned by and under the control of True Value. In <u>Hankes</u>, 244 Ill. App. 3d at 213, 614 N.E.2d at 136, the plaintiff was struck by a car when crossing a private parking lot owned by another party after she had been playing on a playground owned by defendant that was directly south of the parking lot. The court found the defendant did not owe a duty to plaintiff because the injury occurred on land that was not owned or controlled by the defendant. <u>Hanks</u>, 244 Ill. App. 3d at 218, 614 N.E.2d at 139.

Plaintiff contends this case is distinguishable from <u>Hanks</u> and Gold's Gym owed him a duty based upon its status as a landowner and other common-law principles.

Generally, "[a] landowner has a duty to provide a safe means of ingress and egress to his premises for his invitees." <u>Harris v. Old Kent Bank</u>, 315 Ill. App. 3d 894, 902, 735 N.E.2d 758, 764 (2000). Depending on the particular facts of the case, that duty may extend beyond the precise boundaries of such premises. <u>Abdo v. Trek Transportation Co.</u>, 221 Ill. App. 3d 493, 497, 582 N.E.2d 247, 251 (1991).

With sidewalks, a landowner will not ordinarily be held liable for injuries sustained on a public sidewalk under a

- 8 -

municipality's control, even where the sidewalk may also be used for ingress or egress to the landowner's premises. Friedman v. City of Chicago, 333 Ill. App. 3d 1070, 1073, 777 N.E.2d 430, 433 (2002). However, if the landowner appropriates the sidewalk for its own use, the landowner then has a duty to insure the sidewalk is safe. Dodd v. Cavett Rexall Drugs, Inc., 178 Ill. App. 3d 424, 432, 533 N.E.2d 486, 491 (1988). In cases where the landowner has been held to have appropriated a sidewalk for its own use, the courts have found the owner performed an affirmative act of appropriation. Dodd, 178 Ill. App. 3d at 432, 533 N.E.2d at 491. Plaintiff cites two such sidewalk cases.

In McDonald v. Frontier Lanes, Inc., 1 Ill. App. 3d 345, 348, 272 N.E.2d 369, 371 (1971), the plaintiff was injured when she stepped into a hole in a parkway owned by the city and located across a public sidewalk from the parking lot maintained by the defendant for its tavern and bowling patrons. The sidewalk adjacent to the defendant's parking lot was regularly used by the defendant's patrons for parking purposes, which blocked it for normal use by the patrons. McDonald, 1 Ill. App. 3d at 352, 272 N.E.2d at 374. The McDonald court noted plaintiff had exercised the only means of egress made available by the defendant. McDonald, 1 Ill. App. 3d at 353, 272 N.E.2d at 374. Additionally, the owner of the business testified he had known of a defect at issue for some time. McDonald, 1 Ill. App. 3d at

- 9 -

350, 272 N.E.2d at 372.

In Cooley v. Makse, 46 Ill. App. 2d 25, 27, 196 N.E.2d 396, 397 (1964), the plaintiff fell some two or three feet from a tavern's concrete steps on a brick walk that was on a city-owned easement. The brick walk was a means of ingress and egress to the tavern building as it provided the only access to the front door. Cooley, 46 Ill. App. 2d at 28, 30, 196 N.E.2d at 397-98. The Cooley court found the normal use of the tavern's entrance by an invitee presupposed the normal use of the brick walk where the plaintiff was injured. Cooley, 46 Ill. App. 2d at 32, 196 N.E.2d at 399. Both the tenant tavern owner and the landlord knew or should have known of the brick walk's condition. Cooley, 46 Ill. App. 2d at 31, 196 N.E.2d at 398-99.

In this case, we are not dealing with an accident on an adjacent public sidewalk or other public property as in Coley and McDonald. We have an accident on adjacent private property as in Hanks. McCulley stated in his affidavit that True Value allowed customers of Gold's Gym to use True Value's parking lot. As plaintiff stated in paragraph six of both counts against Gold's Gym, True Value controlled and maintained the parking lot. McCulley's affidavit also indicated Gold's Gym did not in any way participate in the maintenance or repairs of True Value's parking lot. Moreover, no facts were alleged that Gold's Gym's in any way altered True Value's parking lot, interfered with True

- 10 -

Value's control and/or maintenance of its property, or treated True Value's parking lot as its own. Thus, the facts indicate True Value retained all control and maintenance of the parking lot and Gold's Gym was merely given permission to have its customers use True Value's parking lot. We disagree with plaintiff that Gold's Gym's communication of True Value's permission to use its parking lot was an affirmative act of appropriation. We also disagree Hanks is distinguishable because Gold's Gym informed its customers they could park on True Value's parking lot. Accordingly, we find Gold's Gym did not owe a duty to plaintiff as the adjacent property owner.

Moreover, we agree with Gold's Gym that plaintiff has forfeited his other arguments challenging the trial court's dismissal by failing to cite authority as required by Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)). See In re Estate of Doyle, 362 Ill. App. 3d 293, 301, 838 N.E.2d 355, 362-63 (2005).

Thus, we find the trial court did not err by granting Gold's Gym's motion to dismiss.

B. True Value's Motion for Summary Judgment

Plaintiff also contends the trial court erred by granting True Value's summary-judgment motion.

A grant of summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no

genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2004); Governmental Interinsurance Exchange v. Judge, 221 Ill. 2d 195, 214-15, 850 N.E.2d 183, 195 (2006).  While summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and thus should be allowed only when the right of the moving party is clear and free from doubt. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 1256 (2004).  We review de novo the trial court's grant of a motion for summary judgment.  See Governmental Interinsurance Exchange, 221 Ill. 2d at 215, 850 N.E.2d at 195.

In determining whether a defendant owed plaintiff a duty, courts consider the following:  (1) the reasonable foreseeability and (2) the likelihood of injury, and (3) the magnitude of the burden on the defendant in guarding against injury and (4) the consequences of placing that burden on the defendant.  LaFever v. Kemlite Co., 185 Ill. 2d 380, 389, 706 N.E.2d 441, 446 (1998).  When a plaintiff alleges an injury caused by a condition on a defendant's property while on the property as an invitee, this court analyzes the foreseeability factor under section 343 of the Restatement (Second) of Torts (Restatement) (Restatement (Second) of Torts §343 (1965)). LaFever, 185 Ill. 2d at 389, 706 N.E.2d at 447.  Section 343 states, in pertinent part, the following:

- 12 -

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."  Restatement (Second) of Torts §343, at 215-16 (1965).

Our supreme court has adopted section 343A of the Restatement (Restatement (Second) of Torts §343A (1965)), which provides an "open and obvious hazard" exception to the duty of care established in section 343.  LaFever, 185 Ill. 2d at 390, 706 N.E.2d at 447.  Section 343A(1) states:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land

whose danger is known or obvious to them,

unless the possessor should anticipate the

harm despite such knowledge or obviousness."

Restatement (Second) of Torts §343A(1), at

218 (1965).

The Restatement defines "known" as "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves."  Restatement (Second) of Torts §343A, Comment b, at 219 (1965).  Something is "obvious" if "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts §343A, Comment b, at 219 (1965).  We note plaintiff's cite to Deibert v. Bauer Brothers Construction Co., 141 Ill. 2d 430, 434-35, 566 N.E.2d 239, 241 (1990), is incorrect as the supreme court quoted the same Restatement definition of "obvious" that we have, which does not mention protecting oneself against the condition.  See Deibert, 141 Ill. 2d at 435, 566 N.E.2d at 241, quoting Restatement (Second) of Torts §343A(1), at 218 (1965).

Here, plaintiff saw the gravel around the pothole when he was 10 feet away from it.  Moreover, plaintiff was aware that riding on gravel at slow speeds could cause a motorcycle to slip. Since plaintiff was aware of the gravel and the risk it posed at

slow speeds, the gravel met the Restatement's definition of a "known" condition.

The gravel also met the Restatement's definition of an "obvious" condition. Plaintiff saw the gravel 10 feet before he encountered it and did not testify or allege the gravel was hidden or obscured from view in any way. Lance also testified loose blacktop was visible around the pothole when he inspected it sometime after the accident. Moreover, Lance, who also rode a motorcycle, was aware gravel was a potential hazard for motorcycles at slow speeds. Thus, a reasonable person in plaintiff's position would recognize the condition and the risk associated with it. Further, the gravel is similar to the rut found to meet the "obvious" definition in Deibert, 141 Ill. 2d at 438, 566 N.E.2d at 243. There, the plaintiff indicated that, if he had watched where he was walking, he would have seen the rut. Also, no evidence was presented the rut was concealed or hidden in any way. Deibert, 141 Ill. 2d at 438, 566 N.E.2d at 243.

Accordingly, we find the undisputed facts demonstrate the gravel was a known and obvious condition in this case.

However, the section 343A(1) exception has its own exception for when "the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts §343A(1), at 218 (1965). A possessor should anticipate harm to an invitee when the possessor "has reason to expect that

the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it."  Restatement (Second) of Torts §343A, Comment f, at 220 (1965).

Primarily, when Illinois courts have applied the distraction exception to impose a duty upon a landowner, the facts were clear "the landowner created, contributed to, or was responsible in some way for the distraction which diverted the plaintiff's attention from the open and obvious condition and, thus, was charged with reasonable foreseeability that an injury might occur."  Sandoval v. City of Chicago, 357 Ill. App. 3d 1023, 1030, 830 N.E.2d 722, 729 (2005).  Here, plaintiff saw the condition that caused his injury when he was 10 feet away from it and chose to drive over it.  Plaintiff did not testify he forgot about the gravel after he saw it or failed to protect himself from it due to a distraction.  Moreover, assuming, arguendo, plaintiff was distracted by traffic conditions, True Value did not create, contribute to, or take responsibility for the traffic on the adjacent public street.  Plaintiff has failed to cite any authority where the distraction exception was applied to a distraction created by the general public.

Thus, under Restatement section 343A, plaintiff's injury was not reasonably foreseeable.  As to the other three factors, gravel is something most people encounter on a daily

- 16 -

basis without injury.  Plaintiff himself testified he had driven over gravel before without incident.  Thus, the likelihood of injury is small.  Further, to guard against injury, a parking lot owner would have to keep the lot free of gravel, which would be a great burden as gravel is usually found on parking lots.  Last, requiring parking lots to be free of gravel would have significant consequences as landowners would have to constantly monitor their parking lots to keep them gravel free.  Accordingly, we find True Value did not owe plaintiff a duty even if he was an invitee.  Since no duty existed to plaintiff if he was an invitee, summary judgment in favor of True Value was appropriate, and we need not address the other issues raised by plaintiff.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, P.J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

While I specially concur in the majority's decision, I write separately to acknowledge reservations about the continued viability of the open-and-obvious doctrine in our comparative-negligence system. Whether an open and obvious danger can function to eliminate a landowner's duty of reasonable care he owes an invitee is disputed among various states. Some jurisdictions adopting comparative-negligence principles have chosen to eliminate the doctrine (Rockweit v. Senecal, 197 Wis. 2d 409, 422, 541 N.W.2d 742, 748 (1995); Robertson v. Magic Valley Regional Medical Center, 117 Idaho 979, 980, 793 P.2d 211, 212 (1990)) while others have upheld it (Armstrong v. Best Buy Co., 99 Ohio St. 3d 79, 788 N.E.2d 1088 (2003) (an Ohio supreme court case including an excellent discussion of the continuing viability of the open-and-obvious doctrine); Groleau v. Bjornson Oil Co., 2004 ND 55, ¶¶15-24, 676 N.W.2d 763, 769-72 (N.D. 2004)).

Our supreme court has addressed the issue of whether to abandon the doctrine in light of the operative comparative-fault principles and has, so far, declined to do so. In Ward v. K mart Corp., 136 Ill. 2d 132, 146, 554 N.E.2d 223, 229 (1990), a man was injured when he left a K mart store carrying a large mirror and ran into a pole outside the store's exit. The court held that the no-duty rule for open and obvious dangers has fallen

under "harsh criticism" but rejected plaintiff's contention that the court should abandon the doctrine in light of comparative negligence.  See also <u>Bucheleres v. Chicago Park District</u>, 171 Ill. 2d 435, 455-56, 665 N.E.2d 826, 835-36 (1996) (holding that swimmers who were injured while diving into Lake Michigan off of a concrete wall were presented with an open and obvious danger despite the park district's recent manipulation of the bottom of the lake which made the lake much shallower in the area the swimmers were diving); but see <u>Bucheleres</u>, 171 Ill. 2d at 463-68, 665 N.E.2d at 839-41 (Harrison, J., dissenting) (arguing in support of other jurisdictions that, upon enacting comparative-fault legislation, abandoned the open-and-obvious doctrine as a complete bar to plaintiff's recovery).

Recently, in <u>Blue v. Environmental Engineering, Inc.</u>, 215 Ill. 2d 78, 101-08, 828 N.E.2d 1128, 1144-48 (2005), our supreme court also addressed the open-and-obvious doctrine's relation to the duty analysis in a premises-liability claim. Although <u>Blue</u> dealt with a products-liability claim, the court spent a great deal of time discussing the open-and-obvious doctrine as it applies in premises-liability cases for purposes of comparison to the products-liability claim before the court.

Because our supreme court continues to respect the open-and-obvious doctrine as an exception to defendant's duty, I concur in the majority's decision.  However, our court may be

following an analytically flawed approach to duty in premises-liability actions.

Justice Harrison's dissent in Bucheleres recognized that "[i]t is a harsh and unjust principle of law yielding results that are often cruel, if not bizarre." Bucheleres, 171 Ill. 2d at 464, 665 N.E.2d at 840 (Harrison, J., dissenting). In Groleau, a North Dakota Supreme Court case, Justice Maring presents a compelling argument for the abolition of the doctrine finding it inconsistent with that state's comparative-negligence system. Groleau, 2004 ND ¶¶27-41, 676 N.W.2d at 772-76 (Maring, J., concurring in part and dissenting in part). Maring argues that rather than be a complete bar to recovery, the openness and obviousness of a danger should be a factor for the jury to assess in determining comparative fault. Groleau, 2004 ND ¶33, 676 N.W.2d at 773 (Maring, J., concurring in part and dissenting in part). Both Justice Maring's opinion and Justice Harrison's dissent note that in a framework of comparative negligence, the open-and-obvious doctrine has no continued validity.

Justice Maring finds that allowing the open and obvious dangers to function as a complete bar to plaintiff's recovery is tantamount to applying discarded principles of contributory negligence. Justice Maring recognizes that prior to enactment of comparative-fault principles, how open or how obvious the danger was irrelevant because under the common law a plaintiff's

encounter with an open and obvious danger was a complete bar to recovery. Under principles of comparative fault, how open and how obvious the danger is should be considered in assessing the comparative faults of the plaintiff and the owner of the premises.

Relegating the open-and-obvious doctrine to a question of fact to be weighed by the fact finder, rather than a complete bar to recovery as a matter of law, seems more consistent with our comparative-fault principles. Nonetheless, the doctrine continues to apply in Illinois, and I concur as the majority has correctly applied it in this case.